FILED

2019 Oct-17  PM 08:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| TRONDHEIM CAPITAL PARTNERS LP and MTP 401K PLAN, <br><br> Plaintiffs, <br><br> v. <br><br> LIFE INSURANCE COMPANY OF ALABAMA, MARVIN LYNN LOWE, RAYMOND RUDOLPH RENFROW, JR., ANNE DAUGETTE RENFROW, ROSALIE RENFROW CAUSEY, ALBURTA DAUGETTE LOWE, and CLARENCE WILLIAM DAUGETTE III, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)   Case No. 4:19-CV-01413-KOB<br>)<br>)   **JURY DEMANDED**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

## PLAINTIFFS' FIRST AMENDED COMPLAINT

---

COMES NOW, TRONDHEIM CAPITAL PARTNERS LP ("***Trondheim***")

and MTP 401K PLAN ("***MTP***" and, collectively, "***Plaintiffs***") and hereby assert

their Amended Complaint against Defendants LIFE INSURANCE COMPANY OF

ALABAMA ("***LICOA***"), MARVIN LYNN LOWE, RAYMOND RUDOLPH

RENFROW, JR., ANNE DAUGETTE RENFROW, ROSALIE RENFROW

CAUSEY, ALBURTA DAUGETTE LOWE, and CLARENCE WILLIAM

DAUGETTE III (collectively "***Director Defendants***" and, together with LICOA, the **"*Defendants*"**)  and  seek legal and equitable relief.  Plaintiffs allege as follows:

## I.    INTRODUCTION

1.    This lawsuit arises from an attempt by Plaintiffs—both of whom have been shareholders of record in LICOA for approximately two years from the date of this filing—to exercise their statutory rights under Alabama law to inspect the books and records of LICOA.  LICOA and the Director Defendants knowingly and in bad faith have repeatedly denied Plaintiffs their statutory rights of inspection.  Plaintiffs now sue to enforce their statutory rights, for statutory damages, and also for breaches of fiduciary duty and securities law violations.

2.    Meanwhile, while the Plaintiffs and other shareholders of LICOA continue to suffer at the hands of their nepotistic oppressors, the Daugette and Renfrow families live lavish lives of luxury while being "employed" at LICOA. Defendants have outright refused to provide Plaintiffs a single document pursuant to their statutory rights of inspection, but even a cursory review of their social media pages reveal the shocking truth about what the Director Defendants have been up to at LICOA.

3.    For example, Director Defendant ROSALIE RENFROW CAUSEY who has been designated by her uncle—and LICOA's chairman and president— CLARENCE WILLIAM DAUGETTE III as the heir apparent to LICOA describes

herself on her social media page as a "*Southern Belle who loves Travel, Purses, Shoes, Champagne, Sushi, Golf, Tennis, Spending time with Friends, and Alabama Football...*".  *See* https://twitter.com/aliecausey.  Ms. Causey has pictures posted from Beverly Hills and other exotic locations often posing with expensive luxury items.  *See id.*  As discussed herein, her lack of qualifications and absence from LICOA during operating hours were documented in a disturbing report from the State of Alabama Department of Insurance.

4.     Likewise, Ms. Causey's husband Michael—who also works for LICOA—has a similar social media presence, claiming to "*Live in Alabama, but rarely there! Love traveling the globe in search of the best life has to offer...*".  *See* https://twitter.com/jetsetmichael.  Like Ms. Causey, Mr. Causey also post pictures of a lavish lifestyle of global travel and extravagance.  *See id.*  The problem with the Causeys—and their family members who are also Director Defendants in this case—is that, consistent with their social media profiles, their interests lie with funding and maintaining they and their families' lifestyles – not the interests of the shareholders of LICOA consistent with their fiduciary and statutory duties.

5.     The disturbing pattern of nepotism and complete disregard for the rights of the shareholders of LICOA and the fiduciary duties incumbent on the Director Defendants is summed up in picture of the Causeys taken at a $2000 per night beach resort couched as "*View from the office!*":



6.     And for years now, this is how LICOA has operated.  Like a family jobs and vacation club for the Daugette and Renfrow families.  Their sense of privilege and entitlement have clearly led them to believe they are above the law. Accountability for their malfeasance is long overdue and Plaintiffs request this Court grant the relief they are entitled to herein.

## II.     PARTIES

7.     Trondheim is a Delaware limited partnership headquartered in Arizona and those facts were true when the causes of action pleaded herein accrued.  Each partner in Trondheim are citizens of states other than Alabama and no partner in Trondheim was a citizen of Alabama when the causes of action pleaded herein accrued.  The partnership composition is as follows:

4

| General Partner | Entity Members (where applicable) | State of Residence |
|---|---|---|
| Trondheim Capital LLC | Colin Peterson | Arizona |

| Limited Partners | Entity Members (where applicable) | State of Residence |
|---|---|---|
| Adam V | | New Jersey |
| Barry P | | Florida |
| Brian R | | Florida |
| Charles C | | Tennessee |
| Colin Peterson | | Arizona |
| Diachronic Investments LLC | Paul O. | Texas |
| Diachronic Investments LLC | Enoch M | Texas |
| Diachronic Investments LLC | Peter M | Texas |
| Maureen P – IRA | | Arizona |
| James B | | Arizona |
| John G | | Texas |
| Kenneth D – Trust | Kenneth D. | California |
| Kevin H | | Washington |
| Michael D | | Arizona |
| Nathaniel R | | California |
| Paul O | | Texas |
| Peter L | | Montana |
| Peter M | | Texas |
| James B – IRA | | Arizona |

9.      MTP is a Trust headquartered in Texas and was headquartered in Texas when the causes of action pleaded herein accrued.  The trustee of MTP, Tom Owens, is likewise a resident of Texas and was a resident of Texas when the causes of action pleaded herein accrued.

10.      LICOA is an Alabama life insurance company headquartered in Gadsden, Alabama.  It may be served with process through its registered agent, Marvin Lynn Lowe, at 302 Broad Street, Gadsden, AL 35901.

11.      MARVIN LYNN LOWE is a natural person and resident of Alabama. He may be served with process at 220 Dogwood Circle, Gadsden, Alabama 35901.

12.     RAYMOND RUDOLPH RENFROW, JR. is a natural person and resident of Alabama.  He may be served with process at 340 Wildwood Road, Gadsden, Alabama  35901.

13.     ANNE DAUGETTE RENFROW is a natural person and resident of Alabama.  She may be served with process at 340 Wildwood Road, Gadsden, Alabama  35901.

14.     ROSALIE RENFROW CAUSEY is a natural person and resident of Alabama.  She may be served with process at 411 Country Club Drive, Gadsden, Alabama  35901

15.     ALBURTA DAUGETTE LOWE is a natural person and resident of Alabama.  She may be served with process at 220 Dogwood Circle, Gadsden, Alabama 35901.

16.     CLARENCE WILLIAM DAUGETTE III is a natural person and resident of Alabama.  He may be served with process at 302 Broad Street, Gadsden, Alabama 35901.

### III.    JURISDICTION AND VENUE

17.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332. There is complete diversity between the parties and the amount in controversy exceeds $75,000.00 for all claims pleaded by Plaintiffs except—possibly, depending on valuation—for MTP's Count One Claim.  However, this Court has jurisdiction

over that claim under 28 U.S.C. § 1367(a) because MTP's Count 1 claim is so related to the claims in this suit that it is part of the same case or controversy.

18.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## IV.   FACTS

### A.   Plaintiffs Purchase Shares In LICOA And Then Learn Of Disturbing Nepotistic Practices.

19.     Plaintiff Trondheim purchased (1) 25,000 of the LINSA class shares; and (2) 5 shares of the of the LINS class shares in LICOA between July 2017 and the present.

20.     Plaintiff MTP purchased (1) 6,700 of the LINSA class shares; and (2) 5 shares of the of the LINS class shares in LICOA between July 2017 and the present.

21.     In May of 2018, Trondheim's principal, Colin Peterson ("*Peterson*"), met personally with CLARENCE WILLIAM DAUGETTE III ("*Daugette*")— president of LICOA and chairman of its board—and the chief operating officer of LICOA, Mr. Steven Keck.  Peterson was disconcerted by the poor operating results and nonsensical capital allocation policy of the company.  During this meeting, Daugette made some startling admissions to Peterson.

22.     First, Daugette said that he does not mind the fact that the company is overcapitalized and the stock is cheap because it allows him and his family to buy back the stock at a good price personally.  This is consistent with the limited disclosures that are provided annually by LICOA, which show the Directors'

personal holdings in LICOA increasing.  However, Daugette also disclosed that he buys the stock on behalf of other family members, which allows him to hide some of the purchases.

23.    The concerns raised in this meeting caused Peterson to obtain a copy of an examination report from the State of Alabama Department of Insurance's examination of LICOA.  *See* Ex. 1.  The report disclosed that management was "not avoiding the appearance of impropriety" because of nepotistic practices and noted that the hiring and salaries of family members was "highly unusual".  Among the items red-flagged by the examiners were as follows:

i.    Defendant ROSALIE RENFROW CAUSEY ("***Rosalie***"), who is the granddaughter of the founder of LICOA and whose parents are both Director-Defendants, was hired as a "management trainee" in 2002.

ii.    Rosalie was paid approximately $24,000.00 per year between 2002-04 and given a car allowance of between $300-$550 during that time frame.

iii.    The examiners found that Rosalie did not keep regular business hours and was routinely not in the office despite allegedly being a "full-time employee in training for upper management".  Her hours were not tracked on a time sheet.

8

iv.    Rosalie reports only to her father – Director Defendant RAYMOND
       RUDOLPH RENFROW, JR.  No other LICOA employee can give a
       complete account of Rosalie's work activities.

v.     LICOA admitted to the examiners that the reason for Rosalie's presence
       is to ensure a dynastic nepotistic succession of the Daugette family in
       controlling LICOA.

vi.    The examiners found it "highly unusual" that a recent college graduate
       such as Rosalie would be allowed to set their own schedule while
       supposedly in training, all while receiving a full-time salary and
       benefits.

vii.   The examiners noted that the above-referenced conduct created an
       appearance of impropriety that would make LICOA vulnerable to
       shareholder litigation.

viii.  The examiners further found that that LICOA was paying for cell
       phones for certain family members of the Director Defendants.

ix.    The examiners also noted that the Directors who are also employees of
       LICOA were receiving both Director fees *and* their employee salaries,
       which they noted was also "highly unusual" since "only family
       members" were receiving these benefits.

x.     Finally, the examiners found that LICOA was paying for some travel expenses for family members travelling to LICOA events.

24.     The red flags raised by this report are even further underscored by the fact that the Department of Insurance's primary function is to protect policy holders – not shareholders. So, the fact that the conduct made it into this report demonstrates how out of the ordinary it is. LICOA is not being ran as a company to maximize value for shareholders – it is being operated as a "family jobs program" for the Director Defendants and their families.

**B.    Plaintiffs Are Denied Their Statutory Rights Of Inspection.**

25.     On June 28, 2019, Plaintiffs sent a letter to LICOA requesting an inspection of LICOA's books and records pursuant to AL CODE § 10A-2-16.02(b), which allows any shareholder who has been a record owner for more than six months to inspect the books, papers, records of account, minutes, and record of shareholders. Under AL CODE § 10A-2-16.02(b), a corporation is required to provide the records within five business days. However, Plaintiffs gave LICOA fourteen calendar days to respond. *See* Ex. 2.

26.     On July, 2 2019, however, LICOA—through its counsel—responded that Plaintiffs were only permitted to a limited inspection because they were not record owners of more than 5% of the shares of LICOA, but still failing to provide those records or a date for inspection. *See* Ex. 3.

27.     Plaintiffs responded by pointing out that AL CODE § 10A-2-16.02(b) permits a record owner of more than 5% of the shares *or* a record owner of shares for more than 180 days to conduct an inspection under that section.

28.     LICOA then agreed to produce records, but claimed to need more time. Even though LICOA's statutory time frame had long since lapsed, on July 15, 2019, Plaintiffs agreed to give LICOA an additional twenty-one days to provide an inspection date and that, in any event, documents should be produced not later than August 23, 2019.

29.     The deadline given by Plaintiffs for compliance, August 5, 2019 came and went with no date identified by LICOA.  Plaintiffs informed LICOA that it was in default of the extension agreement and reserved all rights under AL CODE § 10A-2-16.02(b).

30.     Nine days after the deadline, on August 14, 2019, LICOA sent a letter agreeing to make documents available for inspection and copying with some exceptions.  *See* Ex. 4.  Disturbingly, despite the fact that Daugette admitted in the meeting with Peterson that he regularly receives—and then ignores—offers to buy LICOA, the response states that there are no documents relating to the value of LICOA.  *See id.*

31.    Plaintiffs immediately demanded a date to coordinate receipt of the requested documents.  However, to date, LICOA has not responded or provided any date for inspection and copying.

## V.    CAUSES OF ACTION

### COUNT I

### VIOLATION OF SHAREHOLDER RIGHTS UNDER AL Code § 10A-2-16.02(b) (All Defendants)

32.    Plaintiffs reallege all of the preceding allegations as if fully stated herein.

33.    Plaintiffs tendered demand for inspection of records to LICOA on June 28, 2019.  Plaintiffs are entitled to records under AL CODE § 10A-2-16.02(b) because they were record shareholders of LICOA for more than six months prior to the June 28, 2019 request for inspection pursuant to AL CODE § 10A-2-16.02(b).  Defendants failed to provide the requested records by the time specified by Plaintiffs.

34.    Pursuant to AL CODE § 10A-2-16.02(c), both LICOA and the Directors are liable to Plaintiffs for 10% of their share values, which Plaintiffs believe total at least $1,001,250.00 (based on 12/31/18 book value) for Trondheim and $268,335.00 (based on 12/31/18 book value) for MTP.  However, as discussed herein, Plaintiffs believe this value is suppressed and lower than actual value—as much as three times lower than market value—due to the actions of the Director Defendants and seek an

award of 10% of the actual value of the shares, which, in no event, can be less than the aforementioned values.

35.     Trondheim seeks a penalty of—at minimum--$100,000.00 and up to $300,000.00.  MTP seeks a penalty of—at minimum—of $26,000.00 and up to $78,000.00.

36.     In addition, Plaintiffs demand their costs and reasonable attorneys' fees incurred in prosecuting their shareholder rights.


**COUNT II**

**SHAREHOLDER DEVALUATION CLAIM UNDER AL Code § 10A-2-8.32**
**(Director Defendants Daugette and Rosalie)**

37.     Plaintiffs reallege all of the preceding allegations as if fully stated herein.

38.     Director Defendants Daugette and Rosalie had and have a duty under AL Code § 10A-2-8.32 not to depreciate LICOA shares or to purchase LICOA shares at less than market value.

39.     These Director Defendants have admitted to a scheme whereby they have purposefully overcapitalized LICOA and overpaid family members to depress share value, personally benefit themselves, which allows them to purchase the shares at a lower than market value either through their own purchase or through third-party family members to maintain a controlling interest in LICOA to further their

nepotistic shareholder oppression tactics.

40.    By reason of their position of Directors of LICOA, they are and were required to comply with AL Code § 10A-2-8.32.   These Director Defendants breached their statutory duties toward Plaintiffs by their conduct of violating AL Code § 10A-2-8.32.   Specifically, the LICOA Annual Meeting of Shareholders Report shows that Director Defendant Daugette increased his holdings in LICOA from 20,985 common shares and 31,735 in class "A" shares in 2017 to 21,177 common shares and 32,747 in class "A" shares in 2019.   Likewise, Director Defendant Rosalie increased her holdings in LICOA from 265 common shares and 3,288 in class "A" shares in 2017 to 3,421 in class "A" shares in 2019.

41.    Director Defendants Daugette and Rosalie were directors and/or managing officers of LICOA during the relevant time period; (2) committed actions and/or made statements consistent with (3) an intent to depreciate the value of LICOA's stock and with the further intent to enable themselves or another person, to buy LICOA's stock at less than its real value; and (4) caused Plaintiffs damages in the form of the difference between the real and the depreciated value of the stock at the time Director Defendants Daugette and Rosalie perpetrated these wrongfully depreciating actions.

42.    Plaintiffs have been damaged as a direct and proximate result of the Director Defendants breach of their statutory duties in the amount of the depressed

share values.

43.    Trondheim's shares have been devalued in an amount of at least $1,000.000.00 and up to $2,000.000.00.  MTP's shares have been devalued in an amount of at least $268,000.00 and up to $536,000.00.

44.    Plaintiffs demand these damages as well as their reasonable attorneys' fees and costs.

## VI.    PRAYER FOR RELIEF

Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*s/ Sharonda C. Fancher*
SHARONDA C. FANCHER
Attorney for Plaintiff

**OF COUNSEL**:
BAKER DONELSON BEARMAN
 CALDWELL & BERKOWITZ, P.C.
420 20th Street North, Suite 1400
Birmingham, Alabama 35203
Tel. 205-326-0480
sfancher@bakerdonelson.com

*s/ Joseph David Sibley IV*
JOSEPH DAVID SIBLEY IV

**OF COUNSEL**:
CAMARA & SIBLEY, LLP
4400 Post Oak Parkway, Suite 2700
Houston, Texas 77027
Telephone: 713-966-6789

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served upon the following parties

by electronically filing the foregoing with the Clerk of Court using the ECF system

on this the 17th day of October, 2019.

Life Insurance Company of Alabama
c/o Registered Agent
M. Lynn Lowe
302 Broad Street
Gadsden, AL 35901

Anne Daugette Renfrow
340 Wildwood Road
Gadsden, Alabama 35901

Alburta Daugette Lowe
220 Dogwood Circle
Gadsden, Alabama 35901

Marvin Lynn Lowe
220 Dogwood Circle
Gadsden, Alabama 35901

Raymond Rudolph Renfrow, Jr.
340 Wildwood Road
Gadsden, Alabama 35901

Rosalie Renfrow Causey
411 Country Club Drive
Gadsden, Alabama 35901

Clarence William Daugette III
302 Broad Street
Gadsden, Alabama 35901

_s/ Joe Sibley_
 Of Counsel