

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| TRONDHEIM CAPITAL PARTNERS LP AND MTP 401K PLAN, | ) ) ) ) | |
| Plaintiffs, and | ) ) | |
| MITCHELL PARTNERS, L.P., THE HERR FOUNDATION, THE JULIE M. HERR REVOCABLE TRUST, THE JEFFREY M. HERR TRUST, JEFFREY M. HERR, BJORNSUND VENTURES, LLC, MAUREEN PETERSON, NATE TOBIK, CONANT FAMILY FOUNDATION, and EMILY CLARK, | ) ) ) ) ) ) ) ) ) ) | Case No. 4:19-CV-01413-KOB |
| Plaintiffs in Intervention, | ) ) | |
| v. | ) ) | |
| MARVIN LYNN LOWE, RAYMOND RUDOLPH RENFROW, JR., ANNE DAUGETTE RENFROW, ROSALIE RENFROW CAUSEY, ALBURTA DAUGETTE LOWE, and CLARENCE WILLIAM DAUGETTE III, | ) ) ) ) ) ) ) | **JURY DEMANDED** |
| Defendants, and | ) ) | |
| LIFE INSURANCE COMPANY OF ALABAMA, | ) ) ) | |
| Actual and Nominal Defendant. | ) ) | |

## PLAINTIFFS' SECOND AMENDED CONSOLIDATED COMPLAINT

COMES NOW, TRONDHEIM CAPITAL PARTNERS LP ("*Trondheim*"), MTP 401K PLAN ("*MTP*"), MITCHELL PARTNERS, L.P. ("*Mitchell*"), THE HERR FOUNDATION ("*Herr Foundation*"), THE JULIE M. HERR REVOCABLE TRUST ("*Julie Herr Trust*"), THE JEFFREY M. HERR TRUST ("*Jeffrey Herr Trust*"), JEFFREY M. HERR ("*Jeffrey Herr*"), BJORNSUND VENTURES, LLC ("*Bjornsund*"), MAUREEN PETERSON ("*Peterson*"), NATE TOBIK ("*Tobik*"), CONANT FAMILY FOUNDATION ("*Conant Foundation*"), and EMILY CLARK ("*Clark*" and, collectively, *"Plaintiffs*") and hereby assert, in their individual capacities and, derivatively, as shareholders of Life Insurance Company of Alabama, their Second Amended Consolidated Complaint against Defendants MARVIN LYNN LOWE ("*Marvin Lowe*"), RAYMOND RUDOLPH RENFROW, JR. ("*Raymond Renfrow*"), ANNE DAUGETTE RENFROW ("*Anne Renfrow*"), ROSALIE RENFROW CAUSEY ("*Causey*"), ALBURTA DAUGETTE LOWE ("*Alburta Lowe*"), CLARENCE WILLIAM DAUGETTE III ("*Daugette*" and collectively the "*Director Defendants*"), and Nominal Defendant LIFE INSURANCE COMPANY OF ALABAMA ("*LICOA*" and collectively with the Director Defendants the "*Defendants*")  and  seek legal and equitable relief as follows:

## I.  INTRODUCTION

1.     This lawsuit arises from the gross mismanagement and nepotistic practices of the Director Defendants and their oppression of the shareholders of LICOA and suppression of share values for their own purposes.  Plaintiffs now sue to enforce their statutory rights, for breaches of fiduciary duty, for securities law violations, and for dissolution of LICOA.

2.     To put matters into perspective, here is a table listing the compensation of the Director Defendants from 2017 and 2018 and their families relative to the income of LICOA:

| Person | 2017 | 2018 |
|---|---|---|
| *Daugette* | $361,377 | $351,030 |
| *Lowe* | $360,676 | $350,194 |
| *Raymond Renfrow* | $360,676 | $350,194 |
| *Causey* | $119,956 | $326,637 |
| *Causey's Spouse* | $124,879 | $123,637 |
| **Total** | $1,327,564 | $1,501,692 |
| ***LICOA Net Income*** | $2,172,861 | $276,302 |

3.     As detailed below, these massive salaries that cripple LICOA's income are part of sham "compensation structure" that is really a family jobs program for LICOA's Directors and their families.  They are unqualified and wasteful and these

salaries are completely unjustified. Moreover, they have purposefully overcapitalized LICOA to keep share value down so they can repurchase them cheap and to keep a nest egg to perpetually fund their exorbitant salaries, luxury offices, and lifestyle while the LICOA shares do not even trade at liquidation value.

## II. PARTIES

4.      Trondheim is a Delaware limited partnership headquartered in Arizona and those facts were true when the causes of action pleaded herein accrued.  Each partner in Trondheim are citizens of states other than Alabama and no partner in Trondheim was a citizen of Alabama when the causes of action pleaded herein accrued or at present.  The partnership composition at the time of accrual of these causes of action was as follows:

| General Partner | Entity Members (where applicable) | State of Residence |
|---|---|---|
| Trondheim Capital LLC | Colin Peterson | Arizona |

| Limited Partners | Entity Members (where applicable) | State of Residence |
|---|---|---|
| Adam V | | New Jersey |
| Barry P | | Florida |
| Brian R | | Florida |
| Charles C | | Tennessee |
| Colin Peterson | | Arizona |
| Diachronic Investments LLC | | Texas |
| Diachronic Investments LLC | Enoch M | Texas |

| | | |
|---|---|---|
| Diachronic Investments LLC | Peter M | Texas |
| Maureen P – IRA | | Arizona |
| James B | | Arizona |
| John G | | Texas |
| Kenneth D – Trust | | California |
| Kevin H | | Washington |
| Michael D | | Arizona |
| Nathaniel R | | California |
| Paul O | | Texas |
| Peter L | | Montana |
| Peter M | | Texas |
| James B – IRA | | Arizona |

6.     MTP is a Trust headquartered in Texas and was headquartered in Texas when the causes of action pleaded herein accrued.  The trustee of MTP, Tom Owens, is likewise a resident of Texas and was a resident of Texas when the causes of action pleaded herein accrued and are currently true.

7.     MITCHELL is a California limited partnership that is headquartered in California.  The limited partners of Mitchell are citizens of California and there is no limited partner and/or general partner of Mitchell that is a natural person who is domiciled in the State of Alabama or a citizen of the State of Alabama.  To the extent that any limited partner and/or general partner of Mitchell is a corporation, no such corporation is organized under the laws of Alabama nor is headquartered in Alabama.  To the extent that any limited partner and/or general partner of Mitchell is a limited partnership, limited liability company, trust, or other entity whose citizenship is determined by the domicile of its partners, members, or trustees, or the natural persons or corporation comprising its partnership, membership, or ownership, they are California citizens and no such natural person is domiciled in

the State of Alabama or is a citizen of the State of Alabama and no such corporation is organized under the law of Alabama or headquartered in Alabama. These facts were true at the time the causes of action pleaded herein accrued and are currently true.

8. HERR FOUNDATION is an Illinois non-profit corporation that is headquartered in the State of Illinois. These facts were true at the time the causes of action pleaded herein accrued and are currently true.

9. JULIE HERR TRUST is an Illinois trust whose trustee is Julie M. Herr, who is domiciled in and is a citizen of the State of Illinois. These facts were true at the time the causes of action pleaded herein accrued and are currently true.

10. JEFFREY HERR TRUST is an Illinois trust whose trustee is Jeffery M. Herr, who is domiciled in and is citizen of the State of Illinois. These facts were true at the time the causes of action pleaded herein accrued and are currently true.

11. JEFFREY HERR is a natural person who is domiciled in and is a citizen of the State of Illinois. These facts were true at the time the causes of action pleaded herein accrued and are currently true.

12. BJORNSUND is an Arizona limited liability company whose membership is comprised exclusively of natural persons domiciled in and citizens of the State of Arizona. These facts were true at the time the causes of action pleaded herein accrued and are currently true.

13.   PETERSON is a natural person domiciled in and is a citizen of the State of Arizona.  These facts were true at the time the causes of action pleaded herein accrued and are currently true.

14.   TOBIK is a natural person domiciled in and is a citizen of the State of Pennsylvania.  These facts were true at the time the causes of action pleaded herein accrued and are currently true.

15.   CONANT FOUNDATION is California non-profit corporation headquartered in the State of California.  These facts were true at the time the causes of action pleaded herein accrued and are currently true.

16.   CLARK is a natural person who is domiciled in and is a citizen of the State of California.  These facts were true at the time the causes of action pleaded herein accrued and are currently true.

17.   MARVIN LOWE is a natural person and citizen of Alabama.  He may be served with process at 220 Dogwood Circle, Gadsden, Alabama 35901.  These facts were true at the time the causes of action pleaded herein accrued and are currently true.

18.   RAYMOND RENFROW is a natural person and citizen of Alabama. He may be served with process at 340 Wildwood Road, Gadsden, Alabama  35901. These facts were true at the time the causes of action pleaded herein accrued and are currently true.

7

19.     ANNE RENFROW is a natural person and citizen of Alabama.  She may be served with process at 340 Wildwood Road, Gadsden, Alabama  35901. These facts were true at the time the causes of action pleaded herein accrued and are currently true.

20.     CAUSEY is a natural person and citizen of Alabama.  She may be served with process at 411 Country Club Drive, Gadsden, Alabama 35901.  These facts were true at the time the causes of action pleaded herein accrued and are currently true.

21.     ALBURTA LOWE is a natural person and citizen of Alabama.  She may be served with process at 220 Dogwood Circle, Gadsden, Alabama 35901. These facts were true at the time the causes of action pleaded herein accrued and are currently true.

22.     DAUGETTE is a natural person and citizen of Alabama.  He may be served with process at 302 Broad Street, Gadsden, Alabama 35901.  These facts were true at the time the causes of action pleaded herein accrued and are currently true.

23.     LICOA is an Alabama life insurance company headquartered in Gadsden, Alabama.  It may be served with process through its registered agent, Marvin Lynn Lowe, at 302 Broad Street, Gadsden, AL 35901.  These facts were true at the time the causes of action pleaded herein accrued and are currently true.

### III.        JURISDICTION AND VENUE

24.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332. There is complete diversity between the parties and the amount in controversy exceeds $75,000.00 for all claims pleaded by Plaintiffs because the value of LICOA is in the tens of millions of dollars and Plaintiffs seek dissolution.  LICOA has $127 million in assets and $39 million of shareholder capital.  Moreover, the diminution of the Plaintiffs' shares and other damages sought herein, when aggregated by Plaintiff, are greater than $75,000.00 per Plaintiff.   In addition, Plaintiffs, derivatively, have brought a claim arising under the Securities Exchange Act of 1934, which gives this Court federal question jurisdiction.  In the alternative, this Court has supplemental jurisdiction over any parties and claims not otherwise satisfying the amount in controversy and/or not arising under federal law because they are related to the same case or controversy with the parties and claims that do satisfy the amount in controversy and/or the federal question claims and, therefore, this Court has jurisdiction over those claims under 28 U.S.C. § 1367(a).

25.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## IV.      FACTS

### A.      Plaintiffs Purchase Shares In LICOA And Then Learn Of Disturbing Nepotistic Practices.

26.      Plaintiff Trondheim purchased (1) 25,000 of the LINSA class shares; and (2) 5 shares of the of the LINS class shares in LICOA between July 2017 and the present.

27.      Plaintiff MTP purchased (1) 6,700 of the LINSA class shares; and (2) 5 shares of the of the LINS class shares in LICOA between July 2017 and the present.

28.      Plaintiff Mitchell is the record owner of (1) 13,492 of the LINSA class shares; and (2) 2,840 shares of the of the LINS class shares in LICOA.

29.      Plaintiff Herr Foundation is the record owner of 22,511 of the LINSA class shares in LICOA.

30.      Plaintiff Julie Herr Trust is the record owner of 14,149 of the LINSA class shares in LICOA.

2.      Plaintiff Jeffrey Herr Trust is the record owner of (1) 1,305 of the LINSA class shares; and (2) 955 shares of the of the LINS class shares in LICOA.

31.      Plaintiff Jeffrey Herr is the record owner of (1) 1,150 of the LINSA class shares; and (2) 3 shares of the of the LINS class shares in LICOA.

32.      Plaintiff Bjornsund is the record owner of (1) 1,361 of the LINSA class shares; and (2) 614 shares of the of the LINS class shares in LICOA.

33.      Plaintiff Peterson is record 200 of the LINSA class shares in LICOA.

34.     Plaintiff Tobik is record owner of 400 of the LINSA class shares in LICOA.

35.     Plaintiff Conant is record owner of 1,734 of the LINSA class shares in LICOA.

36.     Plaintiff Clark is record owner of 300 of the LINSA class shares in LICOA.

37.     In May of 2018, Colin Peterson ("***Colin Peterson***"), who is the principal of one of LICOA's largest shareholders, Trondheim, met personally with Daugette—president of LICOA and chairman of its board—and the chief operating officer of LICOA, Mr. Steven Keck.  Colin Peterson was disconcerted by the poor operating results and nonsensical capital allocation policy of the company.  During this meeting, Daugette made some startling admissions to Colin Peterson.

38.     First, Daugette said that he does not mind the fact that the company is overcapitalized and the stock is cheap because it allows him and his family to buy back the stock at a good price personally.  This is consistent with the limited disclosures that are provided annually by LICOA, which show the Directors' personal holdings in LICOA increasing.  However, Daugette also disclosed that he buys the stock on behalf of other family members, which allows him to hide some of the purchases.

39.     The concerns raised in this meeting caused Colin Peterson to obtain a copy of an examination report from the State of Alabama Department of Insurance's examination of LICOA.  The report disclosed that management was "not avoiding the appearance of impropriety" because of nepotistic practices and noted that the hiring and salaries of family members was "highly unusual".  Among the items red-flagged by the examiners were as follows:

40.     Defendant Causey, who is the granddaughter of the founder of LICOA and whose parents are both Director-Defendants, was hired as a "management trainee" in 2002.

41.     Causey was paid approximately $24,000.00 per year between 2002-04 and given a car allowance of between $300-$550 during that time frame.

42.     The examiners found that Causey did not keep regular business hours and was routinely not in the office despite allegedly being a "full-time employee in training for upper management".  Her hours were not tracked on a time sheet.

43.     Causey reports only to her father.  No other LICOA employee can give a complete account of Causey's work activities.

44.     LICOA admitted to the examiners that the reason for Causey's presence is to ensure a dynastic nepotistic succession of the Daugette family in controlling LICOA.

45.     The examiners found it "highly unusual" that a recent college graduate such as Causey would be allowed to set their own schedule while supposedly in training, all while receiving a full-time salary and benefits.

46.     The examiners noted that the above-referenced conduct created an appearance of impropriety that would make LICOA vulnerable to shareholder litigation.

47.     The examiners further found that that LICOA was paying for cell phones for certain family members of the Director Defendants.

48.     The examiners also noted that the Directors who are also employees of LICOA were receiving both Director fees and their employee salaries, which they noted was also "highly unusual" since "only family members" were receiving these benefits.

49.     Finally, the examiners found that LICOA was paying for some travel expenses for family members travelling to LICOA events.

50.     The red flags raised by this report are even further underscored by the fact that the Department of Insurance's primary function is to protect policy holders - not shareholders.  So, the fact that the conduct made it into this report demonstrates how out of the ordinary it is.  LICOA is not being ran as a company to maximize value for shareholders - it is being operated as a "family jobs program" for the Defendants and their families.

51.     Over the years, Defendants have, in fact, purchased shares of LICOA, adding to their stash.  On information and belief, they have used other family members to purchase the LICOA shares at the suppressed prices to keep control in their family.

52.     And the Director Defendants have made no secret of their cushy family jobs program they have set up for themselves.  Causey, for example, who has been designated by her uncle—and LICOA's chairman and president—Daugette as the heir apparent to LICOA, described herself on her social media page as a "*Southern Belle who loves Travel, Purses, Shoes, Champagne, Sushi, Golf, Tennis, Spending time with Friends, and Alabama Football...*".  Causey posted pictures from Beverly Hills and other exotic locations often posing with expensive luxury items.  As discussed herein, her lack of qualifications and absence from LICOA during operating hours were documented in a disturbing report from the State of Alabama Department of Insurance.

53.     Likewise, Causey's husband Michael—who also works for LICOA—had a similar social media presence, claiming to "*Live in Alabama, but rarely there! Love traveling the globe in search of the best life has to offer...*".  Like his wife, Mr. Causey also posted pictures of a lavish lifestyle of global travel and extravagance. The problem with the Causeys—and their family members who are also Director Defendants in this case—is that, consistent with their social media profiles, their

14

interests lie with funding and maintaining they and their families' lifestyles – not the interests of the shareholders of LICOA consistent with their fiduciary and statutory duties.

54.     The disturbing pattern of nepotism and complete disregard for the rights of the shareholders of LICOA and the fiduciary duties incumbent on the Director Defendants is summed up in picture of the Causeys taken at a $2000 per night beach resort couched as "*View from the office!*":



55.     And for years now, this is how LICOA has operated.  Like a family jobs and vacation club for the Director Defendants and their families.  Their sense of privilege and entitlement have clearly led them to believe they are above the law.  In

fact, after these social media posts and photos were brought to light by other shareholders in litigation with LICOA, the social media profiles were removed.

56.   Since Plaintiff's have requested documents from LICOA, it was revealed that:

(a) A 2012 audit report revealed that concert tickets, golfing supplies, golfing games, golfing clothes, spa appointments, spa merchandise, city tours, limo services, in-room movies, personal hygiene items, and sporting events were all expensed to LICOA by the Directors/Officers of LICOA with no clear business purpose;

(b) A December 2014 audit report revealed that there were meals expensed by the Directors/Officers of LICOA with no receipts in contravention of LICOA policy and that some of these meals involved only LICOA executives, contrary to LICOA's policy that any expensed business meals involve a third party that has some business connection to LICOA;

(c) A December 2017 audit report revealed that some meal expenses were, in fact, personal expenses of LICOA Officers/Directors;

(d) Defendants maintain no records of employment, compensation, or promotion of their family members who are employed/compensated by LICOA demonstrating the complete arbitrary nature of LICOA's nepotistic family jobs program;

16

17

(e) Defendants spent millions of dollars for renovations of its offices, including a $4,787 chair for Daugette's office.  Defendants were unable to provide any documents detailing budgeting or calculation for the exorbitant refurbishing and expansion of LICOA's offices.  Again, completely arbitrary practices designed to create a "palace" at shareholder expense for the Director Defendants and their families to run their family jobs program;

(f) Despite having admitted to researching a stock buyback in 2015 and a reverse stock split in 2018 and 2019, LICOA was unable to provide any analyses, calculations, or memoranda on these issue.  This demonstrates the lack of transparency and/or purposefully failing to keep records to avoid hard evidence on their oppressive and nepotistic actions.

57. Additionally, Accountability for Defendants' malfeasance is long overdue and Plaintiffs request this Court grant the relief they are entitled to herein.

58.   Additionally, Terry Silvey (whose husband William worked for LICOA for approximately 54 years) will testify that while helping her husband clean out his office—a task that required her to be at LICOA's offices daily for three months in 2016—she personally observed the comings and goings of the Daugette and Renfrow family members.  Specifically, she recalls that Causey and her husband

would not show up for work until around noon each day and then leave early.  She will also testify that excessive travel such as pictured on social media is one way the Director Defendants milk the company for excessive compensation and benefits.

### B.    Plaintiffs Are Denied Their Statutory Rights Of Inspection.

59.    On June 28, 2019, Plaintiffs Trondheim and MTP sent a letter to LICOA requesting an inspection of LICOA's books and records pursuant to AL CODE § 10A-2-16.02(b), which allows any shareholder who has been a record owner for more than six months to inspect the books, papers, records of account, minutes, and record of shareholders.  Under AL CODE § 10A-2-16.02(b), a corporation is required to provide the records within five business days.  However, Plaintiffs gave LICOA fourteen calendar days to respond.

60.    On July, 2 2019, however, LICOA—through its counsel—responded that Plaintiffs were only permitted to a limited inspection because they were not record owners of more than 5% of the shares of LICOA, but still failing to provide those records or a date for inspection.

61.    Plaintiffs responded by pointing out that AL CODE § 10A-2-16.02(b) permits a record owner of more than 5% of the shares *or* a record owner of shares for more than 180 days to conduct an inspection under that section.

62.    LICOA then agreed to produce records, but claimed to need more time. Even though LICOA's statutory time frame had long since lapsed, on July 15, 2019,

Plaintiffs agreed to give LICOA an additional twenty-one days to provide an inspection date and that, in any event, documents should be produced not later than August 23, 2019.

63.     The deadline given by Plaintiffs for compliance, August 5, 2019 came and went with no date identified by LICOA.  Plaintiffs informed LICOA that it was in default of the extension agreement and reserved all rights under AL CODE § 10A-2-16.02(b).

64.     Nine days after the deadline, on August 14, 2019, LICOA sent a letter agreeing to make documents available for inspection and copying with some exceptions.  Disturbingly, despite the fact that Daugette admitted in the meeting with Peterson that he regularly receives—and then ignores—offers to buy LICOA, the response states that there are no documents relating to the value of LICOA.

65.     Plaintiffs immediately demanded a date to coordinate receipt of the requested documents.  However, LICOA did not respond with dates for inspection and copying until weeks later.  In short, it took Plaintiffs approximately five months to get documents they were statutorily entitled to in five business days.

66.     Further, the documents produced by Defendants were woefully deficient and incomplete.  For example, Plaintiffs have since learned that Terry Jacobs, whose family members are LICOA shareholders, had written letters to LICOA on behalf of his family members raising the same type of concerns

complained of in this suit.  Jacobs also requested documents pursuant to these same statutory rights of inspection cited above, which were stymied by Defendants.

67.     These types of documents were part of Trondheim and MTPs document requests.  Defendants claimed that they produced all such documents.  However, they did not produce the Jacobs documents, which Plaintiffs have recently learned of.  There are also other obvious gaps in production evidencing the fact that Defendants have not discharged their duties of production, further constituting violations of these Alabama statutes.

## V. CAUSES OF ACTION

## COUNT I

**Shareholder Devaluation Claim Under AL Code § 10A-2-8.32 (*All Plaintiffs, individually, against Director Defendants Daugette, Causey, and Raymond Renfrow*)**

68.     Plaintiffs reallege all of the preceding allegations as if fully stated herein.

69.     Director Defendants Daugette, Causey, and Raymond Renfrow had and have a duty under AL Code § 10A-2-8.32 not to depreciate LICOA shares or to purchase LICOA shares at less than market value.

70.     Director Defendant Daugette has admitted to a scheme whereby he and his family have purposefully overcapitalized LICOA and overpaid family members to depress share value and personally benefit themselves and their families, which

allows them to purchase the shares at a lower than market value either through their own purchase or through third-party family members to maintain a controlling interest in LICOA to further their nepotistic shareholder oppression tactics.

71.    By reason of their position of Directors of LICOA, they are and were required to comply with AL Code § 10A-2-8.32.   These Director Defendants breached their statutory duties toward Plaintiffs by their conduct of violating AL Code § 10A-2-8.32.   Specifically, the LICOA Annual Meeting of Shareholders Report shows that Director Defendant Daugette increased his holdings in LICOA from 20,985 common shares and 31,735 in class "A" shares in 2017 to 21,177 common shares and 32,747 in class "A" shares in 2019.   Likewise, Director Defendant Causey increased her holdings in LICOA from 265 common shares and 3,288 in class "A" shares in 2017 to 3,421 in class "A" shares in 2019.   Raymond Renfrow also increased his LINSA shares by 18 shares and his LINS shares by 200 in 2019.   However, as stated above, and on information and belief, these Director Defendants and other Director Defendants also depressed share value for their family members' repurchase in addition to their own repurchases.

72.    Director Defendants Daugette, Causey, and Raymond Renfrow were directors and/or managing officers of LICOA during the relevant time period; (2) committed actions and/or made statements consistent with (3) an intent to depreciate the value of LICOA's stock and with the further intent to enable themselves or

another person, to buy LICOA's stock at less than its real value; and (4) caused Plaintiffs damages in the form of the difference between the real and the depreciated value of the stock at the time Director Defendants Daugette, Causey, and Raymond Renfrow perpetrated these wrongfully depreciating actions.

73.    Plaintiffs have been damaged as a direct and proximate result of the Daugette, Causey, and Raymond Renfrow's breach of their statutory duties in the amount of the depressed share values.

74.    Plaintiffs' shares have all been devalued by nearly 75%.  The LINSA (common) shares liquidation or "book" value is approximately $39.00 per share, however, they have traded as low as $12.00 per share.  The liquidation or "book" value of the LINS (preferred) shares is approximately $195.00 per share and are now trading at as low as $75.00 per share.

75.    Plaintiffs demand these damages as well as their reasonable attorneys' fees and costs.

## COUNT II

### Claim Under AL Code § 10A-2-14.30(2) For Dissolution (*All Plaintiffs, individually, against all Director Defendants*)

76.    Plaintiffs reallege all of the preceding allegations as if fully stated herein.

77.    As discussed above, Defendants' conduct constitutes illegal, oppressive, and fraudulent conduct justifying dissolution under AL Code § 10A-2-

14.30(2).  In addition, as discussed above, the corporate assets of LICOA are being misapplied and/or wasted under AL Code § 10A-2-14.30(2).

78.     Accordingly, Plaintiffs request that LICOA be dissolved and that the shareholders of LICOA, including Plaintiffs, be given the liquidation value of their shares.

## COUNT III

**Shareholder Derivative Claim Under Rule 10b-5 Of The Securities Exchange Act of 1934 (*All Plaintiffs, individually, against all Director Defendants*)**

79.     Plaintiffs reallege all of the preceding allegations as if fully stated herein.

80.     Defendants committed the following conduct in violation of Rule 10b-5 of the Securities Exchange Act of 1934:

(a) Defendants made material omissions in annual shareholders reports of LICOA by failing to disclose that (i) some/all Director Defendants were purposefully suppressing value of the LICOA shares to keep high capital reserves to fund exorbitant salaries and benefits for their families and/or (ii) they were rejecting offers to buy LICOA that would have garnered a premium return for shareholders because selling LICOA would have meant an end to a long-term family jobs program for the Director Defendants and their families; and (iii) LICOA lacked the internal controls to prevent corporate waste, fraudulent business expenses, and excessive

compensation;

(b) these omissions by Defendants were material to Plaintiffs because, had Plaintiffs been aware of these omissions, they would not have purchased securities in LICOA;

(c) these omissions were made in connection with the sale of securities in LICOA;

(d)  these omissions were made with knowledge, intent, recklessness, and/or purpose that Plaintiffs rely on them in order that the Defendants increase the capital reserves for the improper purpose of maintaining a family jobs program and that Defendants suppress share value for their reacquisition because Defendants were aware of their scheme and/or the lack of internal controls to prevent the waste from occurring – indeed the lack of internal controls were by design to perpetuate the waste and breaches of fiduciary duty;

(e) Plaintiffs are actual purchasers of LICOA shares;

(f) Plaintiffs' reasonable reliance on the omissions proximately caused Plaintiffs damages in that their share values will never reach the expectancy value or benefit of Plaintiffs' bargain because, due to Defendants' conduct that is the subject of the material omissions, Plaintiffs will never achieve even book or liquidation value for the shares.

81.     As discussed above, Defendants' conduct has caused a diminution in expectancy value of Plaintiffs' shares of approximately 75%.  Plaintiffs seek their damages, attorneys' fees, and costs under Rule 10b-5 of the Securities Exchange Act of 1934.

## COUNT IV

### VIOLATION OF SHAREHOLDER RIGHTS UNDER AL Code § 10A-2-16.02(b) (*Trondheim and MTP, individually, against all Defendants*)

82.     Plaintiffs reallege all of the preceding allegations as if fully stated herein.

83.     Plaintiffs tendered demand for inspection of records to LICOA on June 28, 2019.  Plaintiffs are entitled to records under AL CODE § 10A-2-16.02(b) because they were record shareholders of LICOA for more than six months prior to the June 28, 2019 request for inspection pursuant to AL CODE § 10A-2-16.02(b).  Defendants failed to provide the requested records/and or provide dates for copying and inspection by the time specified by Plaintiffs.  Defendants also failed to timely produce all records that were requested within their possession and for which they did not have good cause to withhold.

84.     Pursuant to AL CODE § 10A-2-16.02(c), both LICOA and the Directors are liable to Plaintiffs for 10% of their share values, which Plaintiffs believe total at least $1,001,250.00 (based on 12/31/18 book value) for Trondheim and $268,335.00 (based on 12/31/18 book value) for MTP.  However, as discussed herein, Plaintiffs

believe this value is suppressed and lower than actual value—as much as three times lower than market value—due to the actions of the Director Defendants and seek an award of 10% of the actual value of the shares, which, in no event, can be less than the aforementioned values.

85.     Trondheim seeks a penalty of—at minimum--$100,000.00 and up to $300,000.00.  MTP seeks a penalty of—at minimum—of $26,000.00 and up to $78,000.00.

86.     In addition, Plaintiffs demand their costs and reasonable attorneys' fees incurred in prosecuting their shareholder rights.

## COUNT V

**Shareholder Derivative Claim Under Rule 10b-5 Of The Securities Exchange Act of 1934 (*All Plaintiffs, derivatively, against all Director Defendants*)**

87.     Plaintiffs reallege all of the preceding allegations as if fully stated herein.

88.     Defendants committed the following conduct in violation of Rule 10b-5 of the Securities Exchange Act of 1934:

(a) Defendants made material omissions in annual shareholders reports of LICOA by failing to disclose that (i) some/all Director Defendants were purposefully suppressing value of the LICOA shares to keep high capital reserves to fund exorbitant salaries and benefits for their families and/or (ii) they were rejecting offers to buy LICOA that would have garnered a

26

premium return for shareholders because selling LICOA would have meant an end to a long-term family jobs program for the Director Defendants and their families; and (iii) LICOA lacked the internal controls to prevent corporate waste, fraudulent business expenses, and excessive compensation;

(b) these omissions by Defendants were material to Plaintiffs because, had Plaintiffs been aware of these omissions, they would not have purchased securities in LICOA;

(c) these omissions were made in connection with the sale of securities in LICOA;

(d) these omissions were made with knowledge, intent, recklessness, and/or purpose that Plaintiffs rely on them in order that the Defendants increase the capital reserves for the improper purpose of maintaining a family jobs program and that Defendants suppress share value for their reacquisition because Defendants were aware of their scheme and/or the lack of internal controls to prevent the waste from occurring – indeed the lack of internal controls were by design to perpetuate the waste and breaches of fiduciary duty;

(e) Plaintiffs are actual purchasers of LICOA shares;

(g) Plaintiffs' reasonable reliance on the omissions proximately caused

Plaintiffs damages in that their share values will never reach the expectancy value or benefit of Plaintiffs' bargain because, due to Defendants' conduct that is the subject of the material omissions, Plaintiffs will never achieve even book or liquidation value for the shares.

89.     As discussed above, Defendants' conduct has caused a diminution in expectancy value of Plaintiffs' shares—as well as the shares and thus value of LICOA collectively—of approximately 75%.   Plaintiffs seek their damages, attorneys' fees, and costs under Rule 10b-5 of the Securities Exchange Act of 1934.

## COUNT VI

### Shareholder Derivative Claim For Taking Corporate Opportunity Via Share Repurchase (*All Plaintiffs, derivatively, against Director Defendants Daugette, Causey, and Raymond Renfrow*)

90.     Plaintiffs reallege all of the preceding allegations as if fully stated herein.

91.     The actions described in Count I also constitute a breach of fiduciary duty by Directors Causey, Daugette, and Raymond Renfrow.  These purchases of depressed shares by Directors Causey, Daugette, and Raymond Renfrow—and very likely other family members of the Directors of LICOA—constitute a taking of a corporate opportunity of LICOA.  These Directors owed a fiduciary duty to both LICOA and its shareholders to present the opportunity to LICOA for accretive share

repurchases that would have increased demand for the shares, price of the shares, and intrinsic value per share for all LICOA shareholders.

92.    Defendants' conduct has caused a diminution in valuation of LICOA's shares in an amount to be determined by a jury.

## COUNT VII

### Shareholder Derivative Claim For Taking Corporate Opportunity Via Buy-Out (*All Plaintiffs, derivatively, against all Director Defendants*)

93.    Plaintiffs reallege all of the preceding allegations as if fully stated herein.

94.    Because LICOA has received buyout offers from third parties, those buyout offers must be assessed and evaluated to determine whether taking them would be in the best interest of the shareholders of LICOA.  However, it seems clear that any buyout offers were "Dead on Arrival" because it is in the interest of the Director Defendants not to sell LICOA so as to maintain the nepotistic and wasteful compensation and family jobs program that enriches them, while the minority shareholders receive no return on their investment.

95.    Defendants' conduct has caused an opportunity loss for LICOA and its shareholders in an amount to be determined by a jury.

## COUNT VIII

### Shareholder Derivative Claim For Waste (*All Plaintiffs, derivatively, against all Director Defendants*)

29

96.     Plaintiffs reallege all of the preceding allegations as if fully stated herein.

97.     First, as stated above, the Director Defendants are authorizing excessive and unnecessary salaries to family members of the Director Defendant for either duties that are not even being performed or for which they are unqualified. They are also receiving director pay and executive compensation, which is highly unusual.  In addition, the expensed meals, personal items, entertainment, and other items are likewise wasteful and inappropriate compensation to the Defendants.  The excessive compensation is really just a *de facto* dividend to only the majority shareholders and their families.  This is all waste and should be recovered by LICOA.

98.     Second, the Defendant Directors failure to respond to certain Shareholders' document requests in this litigation—Trondheim and MTP—has now subjected LICOA to substantial liabilities.  LICOA should recovery any attorneys' fees or penalties incurred by LICOA from the Director Defendants as there is no excuse for the blatant failure to comply with Alabama law.

99.     The Director Defendants should account for this waste to the shareholders of LICOA in an amount to be determined by a jury.

## VI.   TOLLING/DEFERMENT PLEAS

100.   The relevant state and/or federal statutes of limitations for the above-pleaded causes of action are tolled and/or deferred based on the following doctrines:

### FIRST TOLLING/DEFERMENT PLEA:
### Relation Back Under FRCP 15(c)(1)

101.   Plaintiffs reallege all of the preceding allegations as if fully stated herein.  This Complaint and the causes of action herein relate back, pursuant to Fed. R. Civ. P. 15(c)(1) to Plaintiff's Original Complain [Doc. 1] filed on August 28, 2019.  In the alternative, this Complaint relates back to the Complaint in Intervention Filed originally filed on April 29, 2020.

### SECOND TOLLING/DEFERMENT PLEA:
### Discovery Rule Under Alabama State Law

102.   Plaintiffs reallege all of the preceding allegations as if fully stated herein.  Pursuant to 1975 ALA. CODE § 6–2–3 and interpretive case law, the above-pleaded state causes of action are based on fraudulent conduct and fraudulent concealment and are therefore tolled and/or deferred based on the discovery rule and the relevant limitations period(s) did not begin to run until Plaintiffs ascertained the full extent of their injuries, which was less than two years before the applicable date of filing of this Complaint.

## THIRD TOLLING/DEFERMENT PLEA:
## Discovery Rule Under Federal Law

103.   Plaintiffs reallege all of the preceding allegations as if fully stated herein.  Pursuant to 28 U.S.C. § 1658, the statute of limitation for the above-pleaded cause of action under Rule 10b-5 Of The Securities Exchange Act of 1934 was tolled and/or deferred based on the discovery rule and did not begin to run until Plaintiffs the facts constituting the Rule 10b-5 violations, which was less than two years before the applicable date of filing of this Complaint.

## FOURTH TOLLING PLEA:  Continuing Tort Doctrine

104.   Plaintiffs reallege all of the preceding allegations as if fully stated herein.  This Complaint and the causes of action herein are tolled and/or deferred based on the continuing tort doctrine because the continuing nature of the torts and the injuries complained of herein are not severable and because the allegations are part of an ongoing pattern of conduct.  Therefore, the relevant statute of limitations did not begin to run until the date of the last action complained of herein.

## FIFTH TOLLING PLEA:  Equitable Tolling

105.   Plaintiffs reallege all of the preceding allegations as if fully stated herein.  This Complaint and the causes of action herein are tolled and/or deferred based equitable principles because the Director Defendants were fiduciaries.  *See Jefferson County Truck Growers Ass'n v. Tanner*, 341 So.2d 485, 488 (Ala. 1977) (statute of limitations does not run against claim based on a self-dealing director who

32

is "responsible for the concealment of facts upon which a claim could be based and where knowledge of those facts were solely within the director's control"); *see also Belcher v. Birmingham Trust Nat'l Bank*, 348 F. Supp. 61, 82 (N.D. Ala. 1968) ("A corporate officer charged with wrongdoing of which the other directors and officers know nothing and whom he knows to be ignorant of the wrongdoing cannot escape liability under the shelter of the statute of limitations." (internal quotation marks omitted)).  Therefore, the relevant statute of limitations did not begin to run until the date Plaintiffs discovered the full extent of the conduct complained of herein.

## VII.   <u>VERIFIED CONDITIONS PRECEDENT</u>

106.   Pursuant to Fed. R. Civ. P. 23.1, Plaintiffs aver as follows:

(a) The Plaintiffs were all shareholders at the time of the transactions complained of;

(b) This action is not one of collusion to confer jurisdiction on the action that the Court would otherwise lack, but for collusion;

(c) Plaintiffs Trondheim and MTP made demand on the Board of Directors of LICOA to take action on the conduct complained of in Counts V thru VIII herein on September 9, 2019.  The Board of LICOA appointed a special litigation committee.  After investigation, the special litigation committee recommended not taking action on behalf of LICOA against the Directors.  Therefore, for the additional Plaintiffs to make the exact same

demand as Co-Plaintiffs Trondheim and MTP would be futile.

## VIII.     PRAYER FOR RELIEF

Plaintiffs pray for all of the legal and equitable relief described above and all

other relief to which the Court may deem just and proper.

Respectfully submitted,

*s/ Sharonda C. Fancher*
SHARONDA C. FANCHER
Attorney for Plaintiff

**OF COUNSEL**:
BAKER DONELSON BEARMAN
 CALDWELL & BERKOWITZ, P.C.
420 20th Street North, Suite 1400
Birmingham, Alabama 35203
Tel. 205-326-0480
sfancher@bakerdonelson.com

*s/ Joseph David Sibley IV*
JOSEPH DAVID SIBLEY IV

**OF COUNSEL**:
CAMARA & SIBLEY, LLP
4400 Post Oak Parkway, Suite 2700
Houston, Texas 77027
Telephone: 713-966-6789

## VERIFICATION BY DECLARATION

Joseph Sibley, hereby declares as follows:

1. "My name is Joseph Sibley. My date of birth is February 1, 1975. My address is
4400 Post Oak Pkwy, Suite 2700, Houston, TX 77027, United States of America.

2. "I have reviewed the factual statements in Section VII of this Complaint (Conditions Precedent) and they are within my personal knowledge and are true and correct.

"I declare under penalty of perjury that the foregoing is true and correct.

Executed in Travis County, State of Texas, this 17th day of June 2020.

_____ *Joe Sibley*
Joseph Sibley

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served upon the following parties

by electronically filing the foregoing with the Clerk of Court using the ECF system

on this the 17th day of June, 2020.

| | |
|---|---|
| Life Insurance Company of Alabama | Raymond Rudolph Renfrow, Jr. |
| c/o Registered Agent | 340 Wildwood Road |
| M. Lynn Lowe | Gadsden, Alabama 35901 |
| 302 Broad Street | |
| Gadsden, AL 35901 | Rosalie Renfrow Causey |
| | 411 Country Club Drive |
| Anne Daugette Renfrow | Gadsden, Alabama 35901 |
| 340 Wildwood Road | |
| Gadsden, Alabama 35901 | Clarence William Daugette III |
| | 302 Broad Street |
| Alburta Daugette Lowe | Gadsden, Alabama 35901 |
| 220 Dogwood Circle | |
| Gadsden, Alabama 35901 | |
| | |
| Marvin Lynn Lowe | |
| 220 Dogwood Circle | |
| Gadsden, Alabama 35901 | |

*s/ Joe Sibley*
 Of Counsel