FILED
2020 Dec-08  PM 04:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **TRONDHEIM CAPITAL PARTNERS, LP, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:19-CV-1413-KOB** |
| | ) | |
| **LIFE INSURANCE COMPANY OF ALABAMA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

In 2019, Netflix released a television series featuring Marie Kondo[1], a Japanese home organization professional and bestselling author of *The Life-Changing Magic of Tidying Up*.[2] In the series based on her bestseller, Kondo shows her acclaimed organizational method in action and provides viewers with tips on how to implement it in their homes and lives. And the series spawned a new viral verb phrase: "spark joy." As the cornerstone of Kondo's method, the phrase helps viewers and readers decide whether to keep an object in their lives. If, when a person picks up the object, it does not "spark joy" in the person, the person should discard the object.

The current organization of this case—with its two operative complaints, two motions to dismiss, a motion to abstain, a motion to strike, and a motion to stay discovery—does not "spark joy" or clarity of legal issues. As such—and more precisely for the legal reasons discussed below—the court will discard these motions and pleadings in their current state in an attempt to declutter this case and to bring clarity and organization as the case moves forward.

---

[1] TIDYING UP WITH MARIE KONDO (Netflix 2019).

[2] MARIE KONDO, THE LIFE-CHANGING MAGIC OF TIDYING UP (2014).

This case includes direct and derivative shareholder actions several Shareholders brought against the Life Insurance Company of Alabama (LICOA) and six of its Directors. The court must attempt to organize and dispose of the following motions: LICOA's and the Directors' motion to dismiss the Shareholders' second amended consolidated complaint (doc. 27); LICOA's motion asking this court to abstain from hearing the Shareholders' corporate dissolution claim (doc. 28); the Directors' motion to dismiss the Shareholders' second amended consolidated derivative complaint (doc. 37); the Directors' motion to stay discovery as to the derivative counts (doc. 40); and the Shareholders' motion to strike certain arguments in LICOA's and the Directors' briefs on these motions (doc. 43). For ease of reference and in an attempt to clear up the confusion wrought by the numerous pleadings and motions, the court will refer to the second amended consolidated complaint (doc. 25) as the "Direct Complaint" and to the amended complaint asserting the derivative claims (doc. 32) as the "Derivative Complaint."

For the reasons discussed more fully below, the court will **GRANT IN PART** and **DENY IN PART** LICOA's and the Directors' motion to dismiss the Direct Complaint, as the court concludes that the Shareholders inadequately pled all but one count challenged by that motion. The court will **GRANT** the Directors' motion to dismiss the Derivative Complaint because the Shareholders did not seek leave of the court before filing it; accordingly, the court will **DENY AS MOOT** the Directors' motion to stay discovery as to the Derivative Complaint. The court will also **DENY** in its entirety the Shareholders' motion to strike. Finally, the court will follow the unanimous weight of authority and will **GRANT** LICOA's motion to abstain; the court will accordingly **DISMISS** the Shareholders' claim to dissolve LICOA (Count Two of the Direct Complaint) without prejudice to their ability to refile that claim in the appropriate state forum. And because the Shareholders seek money damages in all their other counts, the court

will **STAY** this case pursuant to the principles enunciated by the Supreme Court in *Quackenbush v. Allstate Insurance Company* to give the Shareholders an opportunity to litigate their dissolution claim in state court. 517 U.S. 706, 721 (1996) (federal courts, when invoking abstention doctrines, may dismiss only those claims in which the plaintiff seeks equitable relief; courts must stay claims seeking money damages). The Shareholders may seek leave of this court to file *one final **single*** amended complaint containing all causes of action against all defendants when the stay in this case is lifted.

## I.      Factual and Procedural Background

As stated above, the plaintiffs in this case are certain shareholders of the Life Insurance Company of Alabama. LICOA's shares trade publicly. (Doc. 25 at 4, 22). Trondheim Capital Partners and the MTP Trust, the original Shareholder plaintiffs, purchased their shares "between 2017 and the present;" the intervening Shareholders do not provide the dates on which they purchased their LICOA shares. (Doc. 15 at 10–11). The Shareholders learned about the potential mismanagement of LICOA by some members of its board of directors[3] in 2018 when Colin Peterson, Trondheim's principal, met with Clarence William Daugette III, LICOA's president and board chairman, to discuss LICOA's "poor operating results and [the] nonsensical capital allocation policy of the company." (Doc. 25 at 11). In this meeting, the Shareholders allege, Mr. Daugette admitted that he and at least some of LICOA's Directors had allowed LICOA to become overcapitalized. According to Mr. Daugette, he "did not mind" LICOA's overcapitalized status because it allowed the defendant Directors and their families to buy LICOA stock at depressed prices, thereby ensuring the defendant Directors' continued control of the company. (Doc. 25 at 11, 14).

---

[3] The Shareholders' complaint does not state how many directors currently serve on LICOA's board. Accordingly, the court is unsure if the six Director defendants in this case constitute the entirety of LICOA's board.

After his meeting with Mr. Daugette, Mr. Peterson obtained a copy of a report authored by the Alabama Department of Insurance summarizing the results of its examination of LICOA. According to the report, the Department expressed concern over the defendant Directors' "nepotistic practices," including issues with "the hiring and salaries of family members." (Doc. 25 at 12).

Indeed, the Shareholders allege that the defendant Directors abused their continued control of LICOA by setting exorbitant salaries for themselves and for family members employed by LICOA, all while they and their family members worked shockingly low hours for the company. Instead of managing LICOA for the Shareholders' benefit, they allege that the defendant Directors ran LICOA "[l]ike a family jobs and vacation club for [the Directors] and their families." (Doc. 25 at 15).

In sum, the Shareholders allege a concerning cycle within LICOA that began when the defendant Directors intentionally overcapitalized it to drive its stock prices down. The defendant Directors and their families then took advantage of the low stock prices to accumulate stock for themselves, which allowed them to keep control of the company. Finally, the defendant Directors then used their control of the company to employ their family members at LICOA and to set high salaries for both themselves and for their family members. And the cycle continues to this day, according to the Shareholders. The Shareholders also allege that LICOA "lacked the internal controls to prevent" this alleged mismanagement and that at least some of the Directors rejected offers to sell LICOA without consulting the shareholders. (Doc. 25 at 23).

After discovering this alleged destructive cycle within LICOA, Shareholders Trondheim and MTP exercised their statutory right of inspection of LICOA's books, papers, and records pursuant to Ala. Code § 10A-2-16.02(b). (Doc. 25 at 18). That section allows certain

shareholders to inspect the records of the corporation in which they hold shares provided the shareholder gives the corporation five business days' notice of its intent to inspect the records. LICOA does not dispute that Alabama law entitled Trondheim and MTP to inspect its records. (*See* doc. 27 at 19–21).

But according to Shareholders Trondheim and MTP, LICOA did *not* provide the records for their inspection until "approximately five months" after their initial demand. And according to Trondheim and MTP, LICOA tendered a "woefully and deficient and incomplete" response to their inspection demands. (Doc. 25 at 19).

Yet LICOA's production apparently furnished the Shareholders with enough information to file this suit against both LICOA and six of its Directors. After several amendments and an intervention by additional Shareholder plaintiffs who seek to recover from the Directors derivatively on LICOA's behalf, the court must now delve into the smorgasbord of claims and motions set out by the parties.

After the intervenor Shareholder plaintiffs joined this case, the court ordered all plaintiffs to file one consolidated complaint (doc. 24). The Shareholders' subsequent pleading (doc. 25, the "Direct Complaint") originally contained *both* direct and derivative shareholder claims, but after LICOA moved to dismiss the Direct Complaint (doc. 27), the Shareholders filed another amended complaint containing *only* derivative claims (doc. 32, the "Derivative Complaint") but incorporating the direct claims in the Direct Complaint (doc. 27) by reference (doc. 32 at 2 n.1). The Shareholders' Derivative Complaint made LICOA's motion to dismiss the Direct Complaint moot to the extent the motion addressed the derivative claims in the Direct Complaint.

While certainly not a method of pleading to which plaintiffs should aspire, the Shareholders' Derivative Complaint properly incorporated by reference the direct counts in the

Direct Complaint. Although an amended complaint generally supersedes any prior complaints, this court recognizes an exception to that rule "when the pleader incorporates by reference allegations from prior pleadings into the new pleading." *Liberty Mut. Ins. Co. v. Fleet Force, Inc.*, No. CV-09-S-773-NW, 2013 WL 3357167, at *8 n.54 (N.D. Ala. July 1, 2013) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)). But the court will use this opportunity to point the Shareholders to some advice from the leading treatise on federal practice:

> [T]o ensure that the pleadings give notice of all the issues that are in controversy so they can be *handled and comprehended expeditiously, the safer practice* is to introduce an amended pleading *that is complete in itself*, rather than one that refers to the prior pleading or seeks to incorporate a portion of it.

6 Arthur R. Miller, Mary Kay Kane & A. Benjamin Spencer, *Federal Practice and Procedure* § 1476 (3d ed. 2020) (emphasis added). And finally, the court notes that it specifically ordered the Shareholders to file one *consolidated complaint*—an order with which their disjointed, confusing, and frustrating method of bringing their claims does not comply. (Doc. 24).

Consequently, the Shareholders' seven causes of action against LICOA and the six Directors currently span two applicable pleadings. In the Direct Complaint (doc. 25), the Shareholders claim that three of LICOA's Directors intentionally devalued LICOA's stock in violation of Ala. Code § 10A-2-8.32 (Direct Count One); ask this court to dissolve LICOA under Ala. Code § 10A-2-14.30(2) (Direct Count Two); bring a Rule 10b-5 claim against the Directors (Direct Count Three); and seek a penalty against both LICOA and the Directors for denying them their statutory rights of inspection in violation of Ala. Code § 10A-2-16.02(b) (Direct Count Four). LICOA and the Directors have moved to dismiss Counts One, Three, and Four (doc. 27), and LICOA has moved this court to abstain from exercising jurisdiction over Count Two, the corporate dissolution claim (doc. 28).

The Shareholders' Derivative Complaint (doc. 32) asserts three common-law claims against the Directors, putatively on LICOA's behalf: two claims alleging that the Directors took corporate opportunities belonging to LICOA (Derivative Counts One and Two) and a claim for waste (Derivative Count Three). The Directors filed separate motions to dismiss the Derivative Complaint (doc. 37) and to stay discovery on the claims in the Derivative Complaint (doc. 40). Finally, the Shareholders moved to strike certain arguments made by LICOA and the Directors in their reply briefs on the motions to dismiss and to abstain (doc. 43). The parties have fully briefed all motions.

## II.   Legal Standards

### A.   *Motion to Dismiss*

LICOA, and, where applicable, the Directors, have moved under Fed. R. Civ. P. 12(b)(6) to dismiss Direct Counts One, Three, and Four, and all Derivative Counts. When reviewing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true all factual allegations in the plaintiff's complaint. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, the court disregards "conclusory allegations" and "'naked assertions' devoid of 'further factual enhancement.'" *Finley*, 907 F.3d at 1333; *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). In other words, the court does not honor "unadorned, the-defendant-unlawfully-harmed-me accusations" with the presumption of truth. *McCullough*, 907 F.3d at 1324 (quoting *Iqbal*, 556 U.S. at 678). Such impermissible assertions include mere "'labels and conclusions' and 'formulaic recitations of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

After disregarding all assertions not entitled to a presumption of truth, the court examines the remaining factual allegations to ensure that they "*plausibly* give rise to an entitlement to relief." *McCullough*, 907 F.3d at 1324 (quoting *Iqbal*, 556 U.S. at 679) (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In short, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Motions to dismiss operate to root out claims with no legal basis. *White v. Bank of Am. Nat. Ass'n*, 599 F. App'x 379, 381 (11th Cir. 2015) (quoting *Cty. of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 818 (7th Cir. 2006)).

### B.    Motion to Abstain

LICOA has moved this court to abstain from exercising jurisdiction over Direct Count Two, the Shareholders' claim for dissolution of LICOA, under an abstention doctrine set out by the United States Supreme Court in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

Federal courts rarely invoke abstention doctrines, because "federal courts have a virtually unflagging obligation to exercise the jurisdiction given them." *Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Federal district courts sitting in diversity, however, do have discretion to abstain from hearing certain state-law equitable claims under the "ill-defined contours" of the *Burford* doctrine. *S. Ry. Co. v. State Bd. of Equalization*, 715 F.2d 522, 527 (11th Cir. 1983); *Rindley v. Gallagher*, 929 F.2d 1552, 1554 (11th Cir. 1991) (courts of appeals review district courts' decisions to abstain for abuse of discretion).

Although the Supreme Court has not set out any "formulaic test for determining when dismissal under *Burford* is appropriate," the Eleventh Circuit has interpreted the doctrine to allow federal district courts to abstain when "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996); *Rindley v. Gallagher*, 929 F.2d 1552, 1556 (11th Cir. 1991) (quoting *Colorado River*, 424 U.S. at 814).

District courts must approach abstention requests with particular care, as the Supreme Court admonished that the doctrine "only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Quackenbush*, 517 U.S. at 728 (quoting *Colorado River*, 424 U.S. at 813).

### C.      *Motion to Strike*

The Shareholders have moved to strike several arguments that they claim LICOA and the Directors raised for the first time in reply briefs on these motions.

As this court has repeatedly held, "new arguments are improper if presented for the first time in a reply brief." *Dates v. Frank Norton, LLC*, 190 F. Supp. 3d 1037, 1040 (N.D. Ala. 2016) (citing *Herring v. Sec'y, Dept. of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005)). But the court will strike or decline to consider new arguments in reply briefs *only* if those arguments are truly "new." If, for example, a movant's "new" argument in a reply brief merely responds to arguments raised by the non-movant in its response to the motion, the argument is not truly "new;" the court may properly consider it. *Williams v. Seacrest Invs., Inc.*, No. 2:12-cv-1919-KOB, 2015 WL 1383941, at *7 n.4 (N.D. Ala. Mar. 23, 2015) (citing *First Specialty Ins. Corp.*

*v. 633 Partners, Ltd.*, 300 F. App'x 777, 777–78 (11th Cir. 2008)) (reply evidence submitted to respond to arguments raised in opposition to motion to dismiss were properly considered by the trial court).

## III.   Analysis

As stated above, LICOA and the Directors have three motions currently pending before the court: a motion to dismiss Direct Counts One, Three, and Four; a motion asking the court to abstain from exercising jurisdiction over Direct Count Two; and a motion to dismiss the Derivative Counts. The court will consider these motions in turn and will address the Shareholders' motion to strike where applicable. The Directors also raise a time-bar defense as to Direct Counts One and Three and as to the entire Derivative Complaint. (Doc. 27 at 16; doc. 37 at 2). But because the court will dismiss each of these counts for independent reasons, the court need not reach the time-bar issue in the context of these motions.

### A.   *Motion to Dismiss (Direct Complaint)*

LICOA and, where applicable, the Directors, have moved to dismiss three of the Shareholders' Direct Counts under Rule 12(b)(6): Direct Count One, a devaluation claim under Ala. Code § 10A-2-8.32 against three of the Directors; Direct Count Three, a claim under Rule 10b-5 of the Securities Exchange Act against all six of the defendant Directors; and Direct Count Four, a claim for a penalty against both LICOA and six of its Directors for their alleged denial of the Shareholders' inspection rights under Ala. Code § 10A-2-16.02(b). The court will consider each Count in turn.

### 1.   Devaluation Claim under Ala. Code § 10A-2-8.32

In Direct Count One, the Shareholders seek to recover from Directors Daugette, Causey, and Raymond Renfrow for their alleged wrongful devaluation of LICOA's stock. (Doc. 25 at

20). Alabama Code § 10A-2-8.32 provides a private right of action when a director or officer of a corporation "do[es] or omit[s] to do any act…with the intent to depreciate the market value of the stock…of the corporation…and with the further intent to enable the [director or officer] to buy any stock…at less than the real value thereof." But the parties disagree as *to whom* this statute bestows the private right of action in this case.

The Directors' motion to dismiss this count does not attack the adequacy with which the Shareholders pled the requisite elements of their devaluation claim. Instead, the parties spar over whether this devaluation claim is *direct*—and can be maintained against the Directors by the Shareholders individually—or *derivative*, in which case the court must dismiss the count so that Shareholders may bring the claim against the Directors derivatively on LICOA's behalf.

The court notes here that the Shareholders have moved to strike the Directors' argument that the Shareholders should have brought the claim derivatively, an argument that the Directors included for the first time in their reply brief. (Doc. 43 at 3; *see also* docs. 27, 38). But because the Directors categorized the Shareholders' devaluation claim as a derivative claim in their motion to dismiss the Direct Complaint (doc. 27 at 3), the Shareholders objected to the Directors' characterization of the devaluation claim as derivative and argued in their response to the motion that the devaluation claim belongs to them as a direct claim. (Doc. 33 at 13). Accordingly, because the Directors' reply brief argument merely responded to an argument that the *Shareholders* put forth in their response brief, the argument in the Directors' reply brief was not truly "new." As such, the court may properly consider it. *Seacrest Investments*, 2015 WL 1383941 at *7 n.4; *633 Partners*, 300 F. App'x at 788 (trial court properly considered reply evidence submitted to respond to arguments raised in opposition to motion to dismiss). The court will therefore **DENY** the motion to strike to the extent it asserts that the Directors argued for the

first time in their reply brief that the Shareholders improperly pled their devaluation claim as a direct claim.

As to the merits of the motion, the court must determine whether the Shareholders properly brought their devaluation claim directly in their individual capacities or if they should have brought it derivatively on LICOA's behalf. If the Shareholders should have brought the claim derivatively, then they do not have standing—or, at the very least, are not the proper parties—to assert the claim against the Directors. The Alabama Supreme Court has held in the past that "the primary difference between derivative and individual claims is one of standing" and has explained that if a claim is in substance derivative, a shareholder does not have standing to assert that claim directly. *Altrust Fin. Servs., Inc. v. Adams*, 76 So. 3d 228, 241–42 (Ala. 2011) (citing *Gilliland v. USCO Power Equip. Co.*, 631 So. 2d 938, 940 (Ala. 1994)). More recently, however, the Court has pointed out that whether a claim is derivative or direct is better classified as raising a "real party in interest" question, as opposed to a standing question. *Ex parte 4tdd.com, Inc.*, ---So. 3d----, ----, 2020 WL 1482376, at \*6 (Ala. Mar. 27, 2020).

Academic technicalities aside, the court may properly address this issue in a Rule 12(b)(6) motion to dismiss, because if "the plaintiff is not the person who should be bringing the suit, the plaintiff has failed to state a claim upon which relief can be granted" such that the court may dismiss the claim under Rule 12(b)(6). *Pro Premium Fin. Co. v. US Premium Fin. Serv. Co.*, No. 0:16-cv-60009-UU, 2016 WL 6248599, at \*5 (S.D. Fla. Oct. 26, 2016) (quoting *Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Cir. 1992)) (internal alterations omitted). And Alabama law on this point is not murky.

Under Alabama law, "[w]hen a plaintiff seeks recovery of damages that are incidental to his or her status as a shareholder in a corporation, the claim is a derivative one and must be

brought on behalf of the corporation." *Ex parte 4tdd.com*, 2020 WL 1482376 at *3 (quoting *Pegram v. Hebding*, 667 So. 2d 696, 702 (Ala. 1995)) (internal quotation marks omitted). Alabama law allows a plaintiff shareholder to bring a direct claim only when the shareholder alleges that the corporation or its directors directly wronged that shareholder; in other words, if the alleged wrong necessarily harmed other shareholders as well, the plaintiff must bring the claim derivatively on behalf of the corporation. *Ex parte 4tdd.com*, 2020 WL 1482376 at *3 (quoting *Green v. Bradley Constr., Inc.*, 431 So. 2d 1226, 1229 (Ala. 1983)) (emphasis added).

And importantly, when "analyzing whether a claim is derivative or direct, [the court] looks to the nature of the alleged wrong rather than the designation used by the plaintiff in the complaint." *Ex parte 4tdd.com*, 2020 WL 1482376 at *6 (quoting *Baldwin Cty. Elec. Membership Corp. v. Catrett*, 942 So. 2d 337, 345 (Ala. 2006)). That the Shareholders' complaint "clearly delineates this claim as a direct and not [a] derivative claim" makes no difference in the court's analysis. (Doc. 33 at 13).

Here, the Shareholders do not allege that the Directors devalued the shares of LICOA "as a *direct* fraud upon" the plaintiff Shareholders *specifically*. *Altrust*, 76 So. 3d at 241 (quoting *Green*, 431 So. 2d at 1229) (emphasis added). Instead, the Shareholders' devaluation claim demonstrates merely that they suffered a "consequential decrease in the value" of their shares because of the Directors' alleged mismanagement. *Altrust*, 76 So. 3d at 241. And, as the Alabama Supreme Court has held, "[if] the wrong directly damages the corporation and its assets from…*intentional mismanagement*, the claim is the corporation's." *Altrust*, 76 So. 3d at 241 (quoting *Gilliland*, 631 So. 2d at 940) (emphasis added).

Specifically, the problem with the Shareholders' assertion that their devaluation claim is direct—and accordingly belongs *only to them*—is that it is not *just* the plaintiff Shareholders'

shares that have allegedly been devalued the Directors' alleged misconduct. Based on the allegations in the complaint, *all* LICOA's shares suffered devaluation by the Directors, and other shareholders beyond the ones here hold devalued LICOA shares as well. Because LICOA's shares trade publicly, numerous other shareholders also suffered a decrease in the value of their shares because of the Directors' alleged mismanagement. The plaintiff Shareholders, for example, noted in their complaint that LICOA's shares were "trading" well below their book value and that "[p]laintiffs' shares have all been devalued by nearly 75%." (Doc. 25 at 22). But if LICOA's shares were "trading" well below their book value, as the Shareholders claim they were, then it is necessarily also true that not *just* the "*plaintiffs'* shares [were] devalued by nearly 75%." But without such an allegation, the Shareholders cannot bring their devaluation claim individually.

Because the Shareholders make no allegation that the Directors devalued the shares of LICOA to intentionally harm the *Plaintiff* shareholders and no others, the alleged loss resulting from the Directors' fraud "falls directly on the corporation as a whole and collectively, *but only secondarily*, upon [the Shareholders] as a function and in proportion of their pro rata investment in the corporation." *Ex parte 4tdd.com*, 2020 WL 1482376 at *8 (quoting *Ex parte Regions Fin. Corp.*, 67 So. 3d 45, 55 (Ala. 2010)). Accordingly, the intentional devaluation claim belongs to LICOA and the Shareholders can only assert it derivatively.

The cases upon which the Shareholders rely do not help their argument; in fact, they work to bring the muddy distinction between direct and derivative claims into sharp relief. In *Fulton v. Callahan*, for example, the Alabama Supreme Court found that a minority shareholder in a close corporation had a direct claim for intentional stock devaluation against the majority shareholders, who also acted as the close corporation's directors. 621 So. 2d 1235, 1237, 1247

(Ala. 1993). But in *Callahan*, the plaintiff was the *only* minority shareholder of the corporation. 621 So. 2d at 1239. And the plaintiff in *Callahan* presented sufficient evidence from which a jury could conclude that the majority shareholder directors intentionally devalued the shares of the corporation to buy him *and only him* out at a lower price. 621 So. 2d at 1247.

Because the plaintiff in *Callahan* was the only minority shareholder, the directors in that case necessarily intended to harm only him, giving rise to his direct claim against the corporation's directors. But here, any intentional devaluation of LICOA's shares harmed not only the plaintiff Shareholders, but *all* the other unnamed shareholders as well.

The Shareholders' reliance on *Brooks v. Hill* is likewise misplaced. 717 So. 2d 759, 760, 762–63 (Ala. 1998). *Brooks* also involved a single minority shareholder that alleged intentional harm by the single majority shareholder.

The court concludes that the intentional devaluation claim under Ala. Code § 10A-2-8.32 belongs to LICOA, not to the Shareholders. Because the Shareholders in their individual capacities do not have standing, or in the alternative, are not the proper parties to bring this claim against the Directors, they did not plausibly plead their direct claim for intentional stock devaluation. *See McCullough*, 907 F.3d at 1324 (quoting *Iqbal*, 556 U.S. at 679). Accordingly, the court will **GRANT** the Directors' motion to dismiss as to Direct Count One, intentional stock devaluation under Ala. Code. § 10A-2-8.32, and will **DISMISS** Direct Count One without prejudice to the Shareholders' ability to seek leave of the court to allege it as a derivative claim when the stay in this case is lifted.

      2.    **Rule 10b-5 Claim**

The Shareholders, in Direct Count Three, bring a claim against all defendant Directors under Rule 10b-5 of the Securities Exchange Act.[4] 17 C.F.R. § 240.10b–5. In the Eleventh Circuit, a private plaintiff bringing an action under Rule 10b-5 must show:

> (1) a material misrepresentation or omission; (2) scienter—a wrongful state of mind; (3) a connection between the misrepresentation and the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as transaction causation; (5) economic loss; and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss.

*Meyer v. Greene*, 710 F.3d 1189, 1194 (11th Cir. 2013) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)) (internal quotation marks omitted). Importantly, the Shareholders here attempt to invoke the so-called "fraud-on-the-market" theory, under which a court may presume the reliance element of a Rule 10b-5 claim. (Doc. 33 at 27). *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1310 (11th Cir. 2011) (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 247 (1988)).

The Shareholders' invocation of the fraud-on-the-market theory carries significant implications vis-à-vis the pleading requirements of a Rule 10b-5 claim. The Supreme Court in *Basic, Inc. v. Levinson* put its imprimatur on the fraud-on-the-market theory, which finds its roots in the "efficient market hypothesis." 485 U.S. 224, 248 (1988). The efficient market hypothesis "provides that in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its

---

[4] The Shareholders styled the 10b-5 claim in the Direct Complaint as a "derivative" claim. (Doc. 25 at 23). But because the Shareholders, in their response brief, allege that they brought the claim directly, the court will examine the substance of the Shareholders' Rule 10b-5 claim. (Doc. 33 at 11). The court also notes that while plaintiffs may bring Rule 10b-5 claims either derivatively or directly, the capacity in which a plaintiff brings a Rule 10b-5 action does not affect the underlying elements of the claim. *See Medkser v. Feingold*, 307 F. App'x 262, 264 (11th Cir. 2008) (citing *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 528–29 (1984)).

business." *FindWhat*, 658 F.3d at 1309–10 (citing *Basic*, 485 U.S. at 241)). Accordingly, the

market "bakes" a company's statements and omissions—both fraudulent and truthful—in to the

price of the company's stock. *FindWhat*, 658 F.3d at 1311. In other words, "the market price of

shares traded on well-developed securities markets reflects all publicly available information,

and, hence, any material misrepresentations[.]" *Meyer*, 710 F.3d at 1195 (quoting *Basic*, 485

U.S. at 246)). And "[b]ecause an informationally efficient market rapidly and efficiently

translates public information into the security's price, the market price will reflect the

defendant's fraudulent statement, and everyone who relies on the market price as a reflection of

the stock's value in effect relies on the defendant's misrepresentation." *FindWhat*, 658 F.3d at

1310 (citing *Basic*, 485 U.S. at 241)).

Assuming without deciding that an efficient market exists for the shares of LICOA, the

fraud-on-the-market theory also carries with it a strict pleading standard for the sixth Rule 10b-5

element—loss causation—an element that the Directors claim the Shareholders inadequately

pled. (Doc. 27 at 15; doc. 38 at 8). Implemented by the Private Securities Litigation Reform Act

of 1995, the "loss causation" element ensures that private Rule 10b-5 plaintiffs only recover

when they can show that the defendant proximately caused their losses. 15 U.S.C. § 78u-4(b)(4);

*Dura*, 544 U.S. at 344.[5] The loss causation element serves the important purpose of ensuring that

the "federal securities laws do not become a system of investor insurance that reimburses

investors for any decline in the value of their investments." *Meyer*, 710 F.3d at 1196 (quoting

---

[5] The Shareholders incorrectly allege that the PSLRA and the Supreme Court's decision in *Dura* "are inapplicable to
this case." (Doc. 33 at 29). The court disagrees. The PSLRA and its loss causation requirement apply to "any private
action arising under [the Securities Exchange Act]," including private actions under Rule 10b-5 of the Securities
Exchange Act. 15 U.S.C. § 78u-4(b)(4); *Dura*, 544 U.S. at 338 ("A private plaintiff who claims securities fraud *must*
prove that the defendant's fraud caused an economic loss") (emphasis added).

*Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1447 (11th Cir. 1997)) (internal quotation marks omitted).

To show loss causation in the Eleventh Circuit, a plaintiff relying on the fraud-on-the-market theory must show "that a fraudulent misrepresentation artificially inflated the security's value [and] that the fraud-induced reliance that was baked into the plaintiff's purchase price was subsequently removed from the stock's price, thereby causing losses to the plaintiff." *Hubbard v. BankAtlantic Bancorp*, 688 F.3d 713, 725 (11th Cir. 2012) (quoting *FindWhat*, 658 F.3d at 1311) (internal quotation marks omitted). And the Eleventh Circuit "explicitly require[s] proof of a causal connection between the misrepresentation and the investment's *subsequent* decline in value." *Robbins*, 116 F.3d at 1448 (emphasis added). All told, a fraud-on-the-market plaintiff can only prove loss causation by showing that (1) the defendant's material misstatements or omissions artificially inflated the security's price; (2) the plaintiff purchased the security at the artificially inflated price; and (3) that the market subsequently learned the truth about the company's misrepresentation or omission, causing the stock price to "decline…in reaction to the revelation." *Meyer*, 710 F.3d at 1196; *FindWhat*, 658 F.3d at 1311; *Hubbard*, 688 F.3d at 725.

And finally, to show the causal connection between the misrepresentation or omission and a security's subsequent decline in value, plaintiffs generally must plead the existence of a "corrective disclosure." *Meyer*, 710 F.3d at 1196. A "corrective disclosure" consists of a "release of information that reveals to the market the pertinent truth that was previously concealed or obscured by the company's fraud." *Meyer*, 710 F.3d at 1196–97. In other words, the corrective disclosure works to "pull the wool from the market's eyes" and reveal the truth about a company's misrepresentation. *Meyer*, 710 F.3d at 1196.

The court concludes that the Shareholders' Rule 10b-5 claim as currently pled falls woefully short of these important standards. To start, the Shareholders claim that the Directors defrauded the market for LICOA's stock through material omissions. According to the Shareholders, the Directors failed to disclose in LICOA's annual reports that "[they] were purposefully suppressing value of the LICOA shares," that they "were rejecting offers to buy LICOA," and that "LICOA lacked the internal controls to prevent corporate waste, fraudulent business expenses, and excessive compensation." (Doc. 25 at 23–24).  But the Shareholders *do not* allege that these omissions caused them to buy LICOA's shares at an inflated price. They also do not allege that their shares *subsequently* declined in value after they purchased them and after the market learned the truth about the Directors' omissions through a corrective disclosure.

In short, if the Shareholders suffered any actual loss from the Directors' alleged omissions, such loss does not appear on the face of the complaint. The market could have learned the truth about the Directors' omissions *before* the Shareholders purchased LICOA shares, for example, in which case the Directors' alleged fraud caused the Shareholders no loss. Likewise, if the Directors' alleged fraud did not cause LICOA's stock price to decline *from the price the Shareholders paid for it*, "[they] have quite literally suffered no loss." *Meyer*, 710 F.3d at 1195 (citing *Dura*, 544 U.S. at 342). Because the complaint does not allege a subsequent decline in the price of LICOA's stock caused by the Directors' omissions, the court concludes that the Shareholders have not plausibly pled loss causation.

Indeed, as to loss causation, the Shareholders claim only that "their share values will never reach the expectancy value or benefit of [their] bargain because, due to Defendants' conduct that is the subject of the material omissions, [they] will never achieve even book or liquidation value for the shares." (Doc. 25 at 24). But the Shareholders point to no authority that

stands for the proposition that expectancy value plays any role in a fraud-on-the-market case. Instead, as discussed at length above, fraud-on-the-market plaintiffs must show some *actual pecuniary loss* to recovery under Rule 10b-5. The Shareholders have not plausibly done that here.

And in a deficient pleading dovetail, the Shareholders' failure to allege loss causation also unmasks their pleading failure as to the damages element of their Rule 10b-5 claim, as "loss causation provides the bridge between reliance and actual damages." *FindWhat*, 658 F.3d at 1312 (citing *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 638 (C.D. Cal. 2009)) (internal quotation marks omitted). Although the Eleventh Circuit treats loss causation and damages as "discrete inquiries," the loss causation element necessarily informs the damages measure. *Robbins*, 116 F.3d at 1447 n.5. The law's limitation on Rule 10b-5 damages to "actual pecuniary loss suffered by the defrauded party" while excluding "any speculative loss of profits" carries out in practice the theoretical purpose of the loss causation rule: plaintiffs may only recover for actual loss caused by the defendant's fraud. *Pelletier v. Stuart-James Co.*, 863 F.2d 1550, 1557– 58 (11th Cir. 1989).

As such, "out-of-pocket loss is generally the proper measure of damages" in a fraud-on-the-market Rule 10b-5 case. *Pelletier*, 863 F.2d at 1558. Under the out-of-pocket loss rule, the plaintiff can recover "the difference between the price paid and the 'real' value of the security, *i.e.*, the fair market value absent the misrepresentations, *at the time of the initial purchase by the defrauded buyer.*" *Robbins*, 116 F.3d at 1447 n.5 (emphasis added). Using the words of the Supreme Court, the Eleventh Circuit has held that "the correct measure of damages is the difference between the fair value of all that the plaintiff received and the fair value of what he

would have received had there been no fraudulent conduct." *Pelletier*, 863 F.2d at 1557 (quoting *Randall v. Loftsgaarden*, 478 U.S. 647, 661 (1986)).

The Shareholders here allege that their damages consist of "the difference between the current (depressed value) and, at minimum, liquidation value." (Doc. 33 at 29; doc. 25 at 24). But as shown above, neither the current price of the shares nor their liquidation value have any relevance to the out-of-pocket damages measurement demanded by Rule 10b-5. Instead, as discussed above, the loss causation and damages elements of a Rule 10b-5 claim work in tandem to provide the proper measurement: the difference between the price of the stock inflated by fraud and the price of the stock after the market learns the truth, all determined at the time of purchase.

And finally, to the extent the Shareholders claim "benefit of the bargain" damages, their complaint does not show an entitlement to that measure of damages. (Doc. 25 at 24). The law of this circuit only allows Rule 10b-5 plaintiffs to recover "benefit of the bargain" damages when the plaintiff and the defendant actually had a "'bargain' or contract[;] [s]pecifically, there must be an enforceable contract for the 'purchase or sale' of securities" in order to support such damages. *Pelletier*, 863 F.2d at 1559 (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)). And as the leading treatise points out, "benefit of the bargain" damages under Rule 10b-5 are contractual in nature and are generally only awarded where the plaintiff and defendant are in contractual privity or where the defendant breached a promise to sell or purchase certain securities from the plaintiff. 4 Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* § 12:98 (2020).

The Shareholders here do not allege that they had any securities contract directly with the Directors or that they were otherwise in contractual privity with them. Instead, from what the

court can glean from the complaint and briefs, the Shareholders apparently bought their LICOA stock on the public market and had no direct contractual dealings with the Directors vis-à-vis the stock purchase, a fact that in practice generally limits Rule 10b-5 claims to the application of the "fraud-on-the market" theory discussed above. *Basic, Inc. v. Levinson*, 485 U.S. 224, 241 (1988). The Shareholders have therefore shown no plausible entitlement to "benefit of the bargain" damages.

In sum, the Shareholders' Rule 10b-5 claim suffers from the "fatal defect" of failing to plausibly allege loss causation and damages. *Pelletier*, 863 F.2d at 1558. As such, the court will **GRANT** the Directors' motion to dismiss as to Direct Count Three, the Shareholders' Rule 10b-5 claim. The court will **DISMISS** Direct Count Three without prejudice to the Shareholders' ability to seek leave of the court to replead it once the stay in this case is lifted, provided they can do so while remaining in compliance with their ethical obligations under Fed. R. Civ. P. 11.

The court will also **DENY AS MOOT** the Shareholders' motion to strike to the extent it relates to arguments on the Rule 10b-5 claim because the court did not consider the arguments attacked by their motion to strike.

### 3.   Claim for Denial of Shareholder Rights under Ala. Code § 10A-2 16.02(b)

In Direct Count Four, the Shareholders seek a penalty against both LICOA and six of its Directors for their alleged failure to produce corporate records for the Shareholders' inspection under Ala. Code § 10A-2-16.02(b).

That Code section furnishes a two-step process courts must employ to determine whether a corporation or its directors wrongly withheld corporate records from eligible shareholders. A finding in the affirmative entitles the shareholders to a statutory penalty "of an amount not to

exceed 10 percent of the value of the shares owned by the shareholder." Ala. Code § 10A-2-16.02(c).

To recover the penalty, shareholders must show: (1) that the Code entitled them to inspect the records they requested; (2) that they sought the records for a proper purpose; and (3) that an officer or agent of the corporation refused to allow the shareholders to inspect the records. Ala. Code § 10A-2-16.02(b)-(c).

Then, the burden shifts to the corporation and its officers to show that they had "reasonable cause" for withholding the documents from the shareholders. Ala. Code § 10A-2-16.02(c); *Smith v. Flynn*, 155 So. 2d 497, 504 (Ala. 1963) ("The burden is upon the corporate officers…to show that…they had reasonable cause for such refusal").

The parties in this case do not contest either that Alabama law entitled the Shareholders to inspect the records they requested or that they stated a proper purpose for their requested inspection. (*See* docs. 27, 38). Instead, LICOA and the Directors move to dismiss the Shareholders' penalty claim on two alternative grounds: LICOA first claims that it did not "refuse" to allow the Shareholders to inspect its records; and, if it did, then it did so for "reasonable cause." (Doc. 27 at 19–21; doc. 38 at 9–10).

The court finds that the Shareholders have plausibly alleged that LICOA and the Directors "refused" to allow them to inspect LICOA's records. First, the Alabama Code provision allowing for inspection requires that eligible shareholders give only five days' notice to the corporation for it to provide the documents to the shareholder for inspection. Ala. Code § 10A-2-16.02(b). But the Shareholders allege in their Direct Complaint that LICOA and the Directors did not allow them to inspect and copy the records until "approximately five months" after their initial inspection request. (Doc. 25 at 19).

23

LICOA and the Directors claim that the statute merely "requires the shareholder to give five days' notice" before inspection but that "it does not require the corporation to produce the records within five days." (Doc. 27 at 20). The Shareholders, on the other hand, interpret the statute to require a corporation to allow eligible shareholders to inspect its records at any time "during regular business hours" provided that the shareholders give the corporation at least five days' notice. (Doc. 33 at 15–21); Ala. Code § 10A-2-16.02(b).

The court agrees with the Shareholders' proposed construction of the statute. Although a dearth of caselaw exists explaining when a corporation must produce records for a shareholder's inspection, the court notes that at common law, "[t]he right of inspection [was] a present right…and an *indefinite delay in according this right [was] equivalent to a denial of it*." *Cobb v. Lagarde*, 129 Ala. 488, 495, 30 So. 326, 328 (1901) (emphasis added). And the Alabama Business and Nonprofit Entities Code, Ala. Code § 10A-1-1.01 *et seq.*, codified the "broad common law right to inspect." *Bank of Heflin v. Miles*, 318 So. 2d 697, 701 (Ala. 1975) (emphasis added).

Additionally, the Shareholders' construction more closely accords with the statute's plain meaning, which this court must follow. *Cox Enters. v. Pension Benefit Guar. Corp.*, 666 F.3d 697, 704 (11th Cir. 2012); *City of Bessemer v. McClain*, 957 So. 2d 1061, 1074–75 (Ala. 2006) ("If, giving the statutory language its plain and ordinary meaning, we conclude that the language is unambiguous, there is no room for judicial construction"). The plain words of the statute entitle eligible shareholders "to inspect and copy during regular business hours…all of its books, papers, records of account, minutes and record of shareholders, if the shareholder gives the corporation written notice of his or her demand…at least five business days *before the date on which* he or she wishes to inspect or copy." Ala. Code § 10A-2-16.02 (emphasis added).

Because the Shareholders allege that they gave LICOA and the Directors *two weeks'* notice of their desired inspection date and that LICOA and the Directors did not produce the records on that date (doc. 25 at 18), the court concludes that LICOA's and the Directors' refusal to produce the records after receiving timely notice from the Shareholders plausibly constituted a "refusal" to produce them under the plain language of Alabama's inspection statute.

And even if LICOA's and the Directors' dilatory production of the records did not constitute a "refusal" to produce them under the statute, the Shareholders have also alleged that LICOA's and the Directors' eventual production contained "obvious gaps…evidencing the fact that [LICOA and the Directors] have not discharged their duties of production." (Doc. 25 at 20). The Shareholders also allege that LICOA and the Directors never allowed them to inspect certain documents. The Shareholders point out, for example, that Terry Jacobs, another LICOA shareholder (who is not a party to this action) wrote letters to the Directors expressing similar concerns to the ones these Shareholders have about the Directors' management of LICOA and requested to inspect LICOA's books and records under Alabama law. (Doc. 25 at 19–20). These Shareholders allege that their document requests encompassed Mr. Jacobs's letters such that LICOA and the Directors should have produced them to the Shareholders and that LICOA and the Directors never produced them. (Doc. 25 at 20). Notably, LICOA and the Directors did not respond to this contention in its motion to dismiss. (*See* doc. 27 at 19–21).

Because the shareholder right to inspect "is not limited to 'relevant' books and records [and] is to be liberally construed," the court concludes that, at the motion to dismiss stage, the Shareholders have plausibly alleged a "refusal" to produce the documents that the statute entitled them to inspect. *Miles*, 318 So. 2d at 701. *See also* Ala. Code § 10A-2-16.02(b) ("a shareholder …is entitled to inspect and copy…[the corporation's] books, *papers*…") (emphasis added).

LICOA and the Directors argue that even if the Shareholders plausibly alleged their "refusal" to allow inspection under the statute, they had "reasonable cause" to refuse the Shareholders' inspection request. (Doc. 27 at 21-22). But the court concludes that LICOA's 12(b)(6) motion to dismiss does not present the court with the proper procedural vehicle to determine whether it had "reasonable cause" to refuse the inspection.

As the court pointed out above, the burden of showing "reasonable cause" for a refusal falls on the company and its directors. *Smith v. Flynn*, 155 So. 2d 497, 504 (Ala. 1963) ("The burden is upon the corporate officers…to show that…they had reasonable cause for such refusal"). And because the "reasonable cause" defense requires the company and its directors to "raise[] matters extraneous to the plaintiff's *prima facie* case," the court concludes that the "reasonable cause" defense constitutes an affirmative defense. *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) (quoting *Ford Motor Co. v. Transp. Indem. Co.*, 795 F.2d 538, 546 (6th Cir. 1986)).

And a Rule 12(b)(6) motion to dismiss does not empower a court to consider affirmative defenses, unless the affirmative defense "appears on the face of the complaint." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1225 n.8 (11th Cir. 2016) (quoting *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011)). LICOA's and the Directors' "reasonable cause" defense does not appear on the face of the Direct Complaint. In fact, the Shareholders do not state in the Direct Complaint the reason for LICOA's and the Directors' delay and refusal to produce certain documents; they only allege that LICOA and the Directors told them that they "need[ed] more time" to produce the documents. (*See* doc. 25 at 18–20; 25-26). Because the Direct Complaint does not state LICOA's and the Directors' reason for its refusal to allow the Shareholders to inspect the documents, the court cannot determine at this time whether they had "reasonable

cause" for their refusal. *See Smith v. Flynn*, 155 So. 2d 497, 502 (Ala. 1963) ("reasonable cause"

means "the exercise of ordinary business care and prudence") (quoting *Sanders v. Comm'r*, 225

F.2d 629, 636–37 (10th Cir. 1955)).

For these reasons, the court will **DENY** the Directors' and LICOA's motion to dismiss

Direct Count Four, the Shareholders' claim for a penalty under Ala. Code § 10A-2-16.02.

### B.    Motion to Abstain (Dissolution Claim under Ala. Code § 10A-2-14.30(2))

LICOA has filed a separate motion asking this court to abstain from hearing Direct Count

Two, the Shareholders' claim for LICOA's dissolution under Ala. Code § 10A-2-14.30(2)). As

grounds for its abstention argument, LICOA points the court to *Burford v. Sun Oil Co*., 319 U.S.

315 (1943). Under *Burford*, a federal court sitting in diversity may abstain from exercising

jurisdiction over state-law equitable claims if the federal court's adjudication "would disrupt

state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*Siegel v. LePore*, 234 F.3d 1163, 1173 (11th Cir. 2000) (citing *Boyes v. Shell Oil Prods. Co.*, 199

F.3d 1260, 1265 (11th Cir. 2000)).

Federal court abstention in the *Burford* context represents an "extraordinary and narrow

exception to the duty of a District Court to adjudicate a controversy properly before it." *Siegel*,

234 F.3d at 1173 (quoting *Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959)).

Even still, multiple federal courts at both the trial and appellate levels have noted that

"*all*…federal courts abstain in corporate dissolution cases [to] avoid infringing on the state's

important interest in overseeing the continued existence of corporations created under its laws."

*Patel v. Oakwin Lodging Inc.*, Nos. 3:08-cv-206-J-32MCR, 3:08-cv-207-J-32MCR, 2008 WL

3365233, at *1 (M.D. Fla. Aug. 8, 2008) (emphasis added). *See also Friedman v. Revenue Mgmt.*

*of N.Y.*, 38 F.3d 668, 671 (2d Cir. 1994) ("*every federal court* that has addressed the issue of

dissolving state corporations has either abstained or noted that abstention would be appropriate")
(emphasis added).

And the Supreme Court, as early as 1935, counseled federal courts against hearing claims
for the dissolution of state corporations, noting that "[i]t has long been accepted practice for the
federal courts to relinquish their jurisdiction in favor of the state courts, where its exercise would
involve control of or interference with the internal affairs of a domestic corporation of the state."
*Pennsylvania v. Williams*, 294 U.S. 176, 185 (1935). Out of an abundance of caution, however,
the court will address the Shareholders' arguments in opposition to LICOA's abstention motion.

The Shareholders first argue that this court should hear their claim for LICOA's
dissolution because this court has historically applied Alabama's judicial dissolution statute.
(Doc. 34 at 3–4). *See Belcher v. Birmingham Tr. Nat. Bank*, 348 F. Supp. 61, 148 (N.D. Ala.
1968). This argument fails, however, because this court decided *Belcher* fifty-two years ago. In
that time, although Alabama corporate law may not have undergone significant change, the law
of abstention in the corporate dissolution context has. *See, e.g.*, *Caudill v. Eubanks Farms, Inc.*,
301 F.3d 658 (6th Cir. 2002); *Feiwus v. Genpar, Inc.*, 43 F. Supp. 2d 289, 294–303 (E.D.N.Y.
1999); *Neary v. Miltronics Mfg. Servs.*, 534 F. Supp. 2d 227 (D.N.H. 2008); *Friedman v.
Revenue Mgt. of N.Y.*, 38 F.3d 668, 671 (2d Cir. 1994). The court also notes that the court in
*Belcher* did not address *Burford* abstention in any way.

The Shareholders next argue that this court should exercise jurisdiction over their claim
for LICOA's dissolution because this case does not satisfy the substantive test for *Burford*
abstention. The Shareholders characterize that test as "(1) the presence of a complex state
regulatory scheme which would be disrupted by federal court review, and (2) the existence of a
state-created forum with specialized competence in the area." (Doc. 34 at 4) (citing *Burford*, 319

U.S. at 327, 332–33). The Supreme Court, however, has clarified that no "formulaic test" exists under the *Burford* doctrine, but has emphasized the relevance of the factors the Shareholders point out here. *Quackenbush*, 517 U.S. at 706. In any event, the court concludes that the *Burford* doctrine warrants its abstention from the Shareholders' dissolution claim.

First, the court concludes that the judicial dissolution provision in the Alabama Business and Nonprofit Entities Code, Ala. Code § 10A-2-14.30, *does* constitute a "complex state regulatory scheme which would be disrupted by federal court review." *Burford*, 319 U.S. at 325–26. The Sixth Circuit's reasoning in *Caudill v. Eubanks Farms* persuades the court on this point. 301 F.3d 658 (6th Cir. 2002). The Sixth Circuit in *Caudill* concluded that a Kentucky district court properly abstained from hearing a claim to dissolve a corporation under Kentucky law. The shareholders in *Caudill* raised the same argument as do the Shareholders here: that "the [Kentucky] judicial dissolution statute does not demonstrate a complex regulatory scheme." 301 F.3d at 665. But the Sixth Circuit disagreed, noting that "[t]his argument overlooks the important state interest implicated in a shareholder dissolution." *Caudill*, 301 F.3d at 664. Notably, the Kentucky judicial dissolution statute is virtually identical to Alabama's, which increases the persuasive weight *Caudill* has on this court. *Compare* Ala. Code § 10A-2-14.30 *with* Ky. Rev. Stat. § 271B.14-300.

The Sixth Circuit pointed out that a claim for dissolution calls "the very existence of the corporation—itself a creature of state law—…into question." *Caudill*, 301 F.3d at 664. And in a persuasive analogy, the Sixth Circuit noted that a claim for corporate dissolution shares many characteristics with a claim for a divorce, over which federal courts lack subject-matter jurisdiction. Like a marriage, a corporation "depends upon state law for its existence." So "a federal court's decision to abstain in equitable actions seeking such a 'corporate divorce'

prevents it from terminating the life of a corporation…just as a federal court's lack of subject-matter jurisdiction over divorce proceedings avoids interfering with state laws governing domestic relations." *Caudill*, 301 F.3d at 664 (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)).

Because it implicates Alabama's important state interest in the internal affairs of corporations created under its laws, the court concludes that Alabama's judicial dissolution statute constitutes a "complex regulatory scheme" within the meaning of *Burford.* Accordingly, the court will abstain from hearing the Shareholders' claim for LICOA's dissolution, as the state of Alabama "should be permitted to exercise control over the internal affairs of its domestic corporations free from interference by federal courts, particularly where the issue is whether the corporation should be permitted to continue in existence or be dissolved." *Caudill*, 301 F.3d at 665 (quoting *Hunter v. SMS, Inc.*, 843 F.2d 1391, 1988 WL 30056, at *15 (6th Cir. Apr. 6, 1988)). *See also Conklin v. U.S. Shipbuilding Co.*, 140 F. 219, 222 (C.C.D.N.J. 1905) ("The corporation is the creature of the state. It derives its life from the state. It possesses the powers conferred by the state. The period of its existence is determined solely by the will of the state.").

The Shareholders also argue that this court should hear their corporate dissolution claim because Alabama does not have a "state-created forum with specialized competence" to hear claims for corporate dissolution. (Doc. 34 at 4). While the question of whether *Burford* is "limited to situations involving a particularized state administrative proceeding and specialized judicial review" appears to be one of first impression in the Eleventh Circuit, the Sixth Circuit in *Caudill* addressed this argument and, after collecting cases, noted that the weight and trend of the authority has departed from such a rigid limit on *Burford* abstention. 301 F.3d at 661–62. Notably, Justice Kennedy addressed this issue in a concurrence in *Quackenbush v. Allstate*

30

*Insurance Company*, in which he discussed *Burford* and reasoned that "[t]he fact that a state court rather than an agency was chosen to implement [the state's] scheme provide[s] *more reason*, not less, for the federal court to stay its hand." 517 U.S. 706, 733 (Kennedy, J., concurring) (emphasis added). *But see St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 589 (5th Cir. 1994) (refusing to abstain on *Burford* grounds where the lawsuit "[did] not involve a state administrative proceeding").

And at least one other federal court to address the abstention question in the context of a corporate dissolution claim has held that the state interest in regulating its corporations is so strong that a federal court should abstain not only on *Burford* grounds, but also based on the Supreme Court's decision in *Pennsylvania v. Williams*, which the court discussed above. *Neary v. Miltronics Mfg. Servs., Inc.*, 534 F. Supp. 2d 227, 231 (D.N.H. 2008) ("*Williams* provides a compelling—and controlling—reason, independent of the *Burford* doctrine, for federal courts to abstain from hearing claims for dissolution…against state corporations"). So, the ultimate outcome of this narrow and undecided question regarding the limits of the *Burford* doctrine would not change this court's conclusion.

In any event, the Sixth Circuit in *Caudill* also pointed out that the Kentucky judicial dissolution statute—just like Alabama's—vests jurisdiction to hear claims for corporate dissolution in "local forums within the courts of general jurisdiction." 301 F.3d at 662 (citing Ky. Rev. Stat. § 271B.14-310(1)). This legislative choice, the *Caudill* court noted, evidenced a state policy of "consolidat[ing] judicial review of [corporate dissolution] cases in the local forums best suited to adjudicate the local issues and facts raised in such cases." 301 F.3d at 662 (quoting *MacDonald v. Village of Northport, Mich.*, 164 F.3d 964, 968 (6th Cir. 1999)).

Here, Alabama also has chosen a state court to implement its judicial dissolution scheme. Under Ala. Code § 10A-2-14.30, "*the circuit court of the county where a corporation's articles of incorporation are filed*…may dissolve the corporation" (emphasis added). As such, just as in Kentucky, Alabama Circuit Courts are courts of specialized competence to hear corporate dissolution claims. Accordingly, Alabama provides the Shareholders with "an adequate forum for the [claim] to dissolve the corporation," the presence of which is a necessary condition to a *Burford* abstention. *Feiwus v. Genpar, Inc.*, 43 F. Supp. 2d 289, 295, 298 (E.D.N.Y. 1999) (citing *Ala. Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341, 349 (1951)).

The Shareholders' argument that the statute's vesting of jurisdiction for dissolution claims in the local circuit courts "appears to be a sort of venue provision" (doc. 43 at 4) ignores *the very next* section of the Alabama code, which separately lays venue for judicial dissolution proceedings in "the county where a corporation's articles of incorporation are filed." Ala. Code § 10A-2-14.31(a). This court must presume that "every word, sentence, or provision of a statute was intended for some useful purpose, [and] has some force and effect." *Rochester-Mobile, LLC v. C&S Wholesale Grocers, Inc.*, 239 So. 3d 1139, 1144–45 (Ala. 2017) (quoting *Richardson v. Stanford Props., Inc.*, 897 So. 2d 1052, 1058 (Ala. 2004)). So, the court concludes that the dissolution statute's vesting of jurisdiction for judicial dissolution claims in the local circuit courts is *not* a venue provision, because the Code separately designates the venue for such actions. Accordingly, Alabama law "provides a regulatory scheme to address" actions for the judicial dissolution of corporations. *Caudill*, 301 F.3d at 662. And that scheme does not provide for *federal* judicial dissolution of an Alabama corporation.

Because the court concludes that matters relating to the internal affairs of Alabama corporations constitute "matter[s] of substantial public concern," this federal court will not

"disrupt [Alabama's] efforts to establish a coherent policy with respect to" the corporations who receive their very existence from its laws. *See Siegel v. LePore*, 234 F.3d 1163, 1173 (11th Cir. 2000) (citing *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000)).

Accordingly, this court will abstain from hearing Direct Count Two, the Shareholders' claim for dissolution of LICOA. The court will **GRANT** LICOA's motion to abstain and will **DISMISS** Direct Count Two without prejudice to the Shareholders' ability to assert that claim in the proper court under Alabama law.

And because the Shareholders seek money damages in all their other counts, the court will **STAY** this case pursuant to the principles enunciated by the Supreme Court in *Quackenbush v. Allstate Insurance Company* to give the Shareholders an opportunity to litigate their dissolution claim in state court. 517 U.S. 706, 721 (1996). Federal courts, when invoking abstention doctrines, may dismiss only those claims in which the plaintiff seeks equitable relief; courts must stay claims seeking damages. *Quackenbush*, 517 U.S. at 721. *See also Feiwus v. Genpar, Inc.*, 43 F. Supp. 2d 289, 302 (E.D.N.Y. 1999) (staying damages claims after dismissing on abstention grounds claim for corporate dissolution to prevent federal court interference with the dissolution claim, which the court granted the plaintiff leave to file in state court); *Neary*, 534 F. Supp. 2d at 232 (following *Feiwus* and also staying claims seeking damages after dismissing dissolution claim on abstention grounds, where, like here, the dissolution claim and the damages claim had both legal and factual commonality).

Finally, the court will **DENY** the Shareholders' motion to strike LICOA's arguments in its reply brief to the extent those arguments relate to Alabama's interest in regulating the insurance industry within its borders because the court did not consider those arguments in deciding to grant LICOA's motion to abstain.

### C.        *Motion to Dismiss (Derivative Complaint)*

Finally, the Directors have moved to dismiss the Shareholders' Derivative Complaint on a variety of grounds. But because the court concludes that the Shareholders needed leave of the court to file the Derivative Complaint and because they did not seek such leave, the court need not reach the Directors' other arguments.

As the court explained above, the Shareholders filed the Derivative Complaint as their "First *Amended* Consolidated Derivative Complaint." (Doc. 32) (emphasis added). The Shareholders did not seek leave of the court before they filed the Derivative Complaint; instead, they claim that they properly filed it as an amendment as a matter of course under Fed. R. Civ. P. 15(a)(1).

Under Fed. R. Civ. P. 15(a)(1), "[a] party may amend its pleading *once* as a matter of course" (emphasis added). If "the pleading is one to which a responsive pleading is required," such as a complaint, the amending party must serve the amended pleading 21 days after it served the original complaint, 21 days after receiving service of a responsive pleading, or 21 days after receiving service of a Rule 12(b) motion. Fed. R. Civ. P. 15(a)(1)(A)-(B). "In *all other cases*, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2) (emphasis added).

But here, the Shareholders filed *three other complaints* before they filed the Derivative Complaint, including two prior amended complaints. (Docs. 1, 14, 25, 32). Under the plain language of Rule 15, the Shareholders had 21 days to amend their complaint as a matter of course after the Directors responded (doc. 9) to the original complaint. And after that date passed, Rule 15 required the Shareholders to seek either the written consent of LICOA and the Directors or the leave of this court before they filed another amended complaint. This court

granted the Shareholders leave to file their first two amended complaints, but the Shareholders did not seek leave to file the Derivative Complaint, which constituted their third *amended* pleading. (Docs. 13, 24).

The Shareholders provide two unpersuasive justifications for their failure to follow the proper procedure before they filed the Derivative Complaint. First, the Shareholders argue that because several additional Shareholder plaintiffs joined the suit through intervention, those intervening Shareholders had the right to file the Derivative Complaint as a matter of course. (Doc. 42). But the Shareholders' own brief shows the flaw in this argument: the intervening Shareholders *joined* Trondheim and MTP's complaint; the intervening Shareholders never filed their own complaint. (Doc. 42 at 6–7 n.1; doc. 32 at 1). The Derivative Complaint plainly lists Trondheim and MTP, the Shareholders who filed the original complaint, as plaintiffs; it lists the intervening Shareholders only as "plaintiffs in intervention." (Docs. 1, 32). As such, the intervening Shareholders had no pleading of their own to amend. They essentially attempted to amend *Trondheim and MTP's* complaint. *See McKersie v. IU Int'l*, 120 F.R.D. 60, 62 (N.D. Ill. 1988). And the addition of the intervening Shareholders likewise did not "revive" Trondheim and MTP's ability to amend without leave of the court. *See* 6 Arthur R. Miller, Mary Kay Kane & A. Benjamin Spencer, *Federal Practice and Procedure* § 1481 (3d ed. 2020).

The Shareholders also argue that they properly filed the Derivative Complaint without this court's leave because it constituted their first amendment in their "derivative capacities." (Doc. 42 at 7). Apart from the fact that the Shareholders cite no authority for this proposition, it also ignores the plain language of Rule 15, which allows "*a party*" to amend once as a matter of course. And, as the court pointed out above, Trondheim and MTP previously filed three other complaints before they filed the Derivative Complaint.

This argument also ignores the fact that although the Shareholders may have brought the Derivative Complaint in a derivative capacity on LICOA's behalf, the court should and will still classify the Shareholders, not LICOA, as the plaintiffs in the Derivative Complaint because LICOA's management opposes the derivative suit. *See Duffey v. Wheeler*, 820 F.2d 1161, 1163 (11th Cir. 1987) (corporations are properly aligned as party defendants when management is "actively antagonistic" to the plaintiff, as opposed to merely deadlocked); *and Liddy v. Urbanek*, 707 F.2d 1222, 1224 (11th Cir. 1983) ("if the complaint in a derivative action alleges that the controlling shareholders or dominant officials of the corporation are guilty of fraud or malfeasance, then antagonism is clearly evident and the corporation remains a defendant").

In light of the liberal amendment standards in Fed. R. Civ. P. 15(a)(2), and to prevent the confusion that naturally arises from a case with two operative complaints, the court will **GRANT** the Directors' motion to dismiss the Derivative Complaint and will **DISMISS** that complaint without prejudice to the Shareholders' ability *to seek leave of the court* to reallege their derivative claims when the stay in this case is lifted. The court will accordingly **DENY AS MOOT** the Directors' motion to stay discovery as to the Shareholders' derivative claims.

## IV.    Conclusion

The court did its best to declutter this case, but this case may never "spark joy," at least to the extent a lawsuit is capable of "sparking joy" with the clarity of its claims.

For the reasons explained above, the court will **GRANT** the Directors' motion to dismiss Direct Counts One and Three and will **DISMISS** those counts without prejudice. The court will **DENY** LICOA's and the Directors' motion to dismiss Direct Count Four. The court will **GRANT** LICOA's motion to abstain as to Direct Count Two; accordingly, it will **DISMISS** Direct Count Two without prejudice to the Shareholders' ability to bring that claim in state court

and will **STAY** this case to allow the Shareholders that opportunity. The court will **GRANT** the Directors' motion to dismiss the Derivative Complaint and will **DISMISS** that complaint without prejudice. The court finally will **DENY** the Shareholders' motion to strike and will **DENY AS MOOT** the Directors' motion to stay discovery as to the derivative claims.

The court will allow the Shareholders to seek leave to file *one final* amended complaint containing all their causes of action—both direct and derivative—against all defendants once the stay in this case is lifted. The court hopes such repleading will allow the Shareholders to clear up the confusion that has plagued both the litigants and the court in this case and will aid the court in exercising its "inherent authority to control its docket and [to] ensure the prompt resolution of lawsuits." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

The court will enter an order to the above effect contemporaneously with this opinion.

**DONE** and **ORDERED** this 8th day of December, 2020.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE